(808 P.2d 444)
No. 65,361

STATE OF KANSAS, *Appellee*, v. RICHARD A. PARSON, *Appellant.*

Opinion filed March 22, 1991.

*Roger K. Wilson, Milo M. Uhruh, Jr.,* and *Kurt W. Ratzlaff,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, for appellant.

*Kenneth Van Blaricum,* assistant county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRISCOE, C.J., REES and Pierron, JJ.

REES, J.: Defendant Richard A. Parson appeals from his Pratt County misdemeanor conviction for operating an unregistered vehicle in violation of K.S.A. 1990 Supp. 8-142. Parson complains that the trial court erred in finding that the equipment he was

operating is not exempt from registration pursuant to K.S.A. 1990 Supp. 8-128(b).

K.S.A. 1990 Supp. 8-127(a) requires that "[e]very owner of a motor vehicle . . . intended to be operated upon any highway in this state . . . shall . . . apply for and obtain registration in this state."

K.S.A. 1990 Supp. 8-142 provides:

"It shall be unlawful for any person to commit any of the following acts and . . . violation is subject to penalties provided in K.S.A. 8-149 . . . :

"First: To operate, or for the owner thereof knowingly to permit the operation, upon a highway of any vehicle . . . which is not registered . . . ."

We observe that both the operator and the permitting owner of an unregistered vehicle are subject to prosecution for violation of K.S.A. 1990 Supp. 8-142. That occurred in *State v. Groves*, 232 Kan. 66, 653 P.2d 457 (1982), where the owner and three of its drivers were prosecuted.

Violation of K.S.A. 1990 Supp. 8-142 is a criminal offense. K.S.A. 1990 Supp. 8-149.

The statutory provision lying at the core of this case is K.S.A. 1990 Supp. 8-128(b):

"Self-propelled cranes and earth moving equipment which are equipped with pneumatic tires may be moved on the highways of this state from one job location to another . . . without complying with the provisions of the law relating to registration . . . ."

The question at hand is whether the trial court erred in finding that the equipment owned by Harp Well and Pump Service, Inc., (the Harp rig) and operated on a Pratt County highway by Parson is not within the registration exemption afforded by K.S.A. 1990 Supp. 8-128(b) to "[s]elf-propelled cranes and earth moving equipment." Otherwise put, the question is whether the statutory words "[s]elf-propelled cranes and earth moving equipment" identify a class or category of equipment that encompasses the Harp rig.

For the purpose of this opinion, it is sufficient to say that the Harp rig is a mobile water well drilling rig. It is a specialized piece of equipment having as its major and structurally united components an International truck, a drilling tower, and associated drilling machinery.

The trial court's decision in this case that the Harp rig is not within the class or category of vehicles or equipment afforded registration exemption by K.S.A. 1990 Supp. 8-128(b) was founded substantially upon *Groves*, 232 Kan. 66, a case in which violations of K.S.A. 1981 Supp. 8-142 were charged and our Supreme Court concluded that the "Schwing concrete pump/ boom trucks" involved there were not exempt from registration. The trial court in the present case found that "the vehicle in question is a truck with incidental specialty equipment affixed thereto" and concluded that "the truck is subject to registration under Kansas law."

Given the fact-driven decisions of the Supreme Court in *Groves* and the trial court here, it is likely we would affirm if this appeal were grounded on a sufficiency of the evidence or similar claim. But that easy appellate disposition is not readily available to us in view of Parson's contention that his conviction is barred by operation of the doctrine of collateral estoppel.

The collateral estoppel contention stems from the fact that, prior to the date of the offense alleged here, December 14, 1989, there had been a judicial determination that the Harp rig "is a 'vehicle'; that it does come within the registration exemption provision of 8-128(b); and, that it is exempt from the vehicle registration requirements of the laws of the State of Kansas." That explicit adjudication was made and memorialized in the journal entry of judgment filed March 17, 1972, in *Harp Pump & Well Service, Inc. v. Ronald G. Miller, Treasurer of Sedgwick County, Kansas, and The State of Kansas, State Highway Commission, Motor Vehicle Department*, case No. 22795, in the District Court of Sedgwick County, Kansas.

The Sedgwick County case was a declaratory judgment action, a civil action, initiated and prosecuted by Harp. It concerned the specific equipment, the Harp rig, that is the subject of the present case and whether payment of a registration fee for the Harp rig is required. No appeal having been taken, the Sedgwick County adjudication constituted a final judgment on the merits.

Even though the parties' arguments on appeal speak of the doctrine of res judicata (claim preclusion), it is the closely related doctrine of collateral estoppel (issue preclusion) that is involved.

It is said in *Penachio v. Walker*, 207 Kan. 54, 57, 483 P.2d 1119 (1971):

"The doctrine of *res judicata* is a bar to a second action upon the same claim, demand or cause of action. It is founded upon the principle that the party, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction. The doctrine of collateral estoppel is a bar in an action upon a different claim as to certain matters in issue which were determined in a former judgment. The distinction between *res judicata* and collateral estoppel is based on the distinction between a cause of action and issues in a cause of action."

More recently, it has been said in *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988):

"[C]ollateral estoppel . . . prevents relitigation in a different claim of issues conclusively determined in a prior action. [Citation omitted.] . . . [C]ollateral estoppel may be invoked where the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment."

Under the doctrine of collateral estoppel, an issue once actually litigated and determined may not again be litigated in a subsequent action between the same parties or their privies, even though involving a different cause of action. *Goetz v. Board of Trustees*, 203 Kan. 340, 349, 351, 454 P.2d 481 (1969).

Was the issue of whether the Harp rig is within the K.S.A. 1990 Supp. 8-128(b) exemption conclusively determined in the prior Sedgwick County action? Yes. Was determination of the issue necessary to support the judgment in the prior Sedgwick County action? Yes, clearly. The issue was the foundation subject of the declaratory judgment action. Was the prior Sedgwick County judgment a judgment on the merits? Obviously, yes.

Of greatest difficulty is the question of privity for the purpose of applying collateral estoppel here.

In *Goetz*, a collateral estoppel case, it is said that collateral estoppel does not require mutuality of the parties. 203 Kan. at 349-50. Importantly, *Goetz* also says that "[t]here is no generally prevailing definition of 'privity' which can be automatically applied

to all cases. A determination of the question as to who are privies requires careful examination into the circumstances of each case as it arises." 203 Kan. at 350-51.

With no hesitation we find the requisite privity existing here insofar as Harp Well and Pump Services, Inc., and Parson— an employer and its employee—are concerned. But that does not matter. Instead, there remains the question whether there is "privity" between the State in this case and a defendant in the prior Sedgwick County case? We conclude there is.

In *Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P.2d 858 (1967), Pierce, a property owner, brought an action to set aside a tax foreclosure sale of his property. On appeal, the Supreme Court addressed the question whether the constructive service by publication utilized in the tax foreclosure proceeding was sufficient to obtain jurisdiction over Pierce. It was held that the constructive service was not sufficient because due process required that, inasmuch as Pierce's address was readily obtainable in at least the county treasurer's office, Pierce was entitled to personal service. The Supreme Court found that Pierce's whereabouts could have been ascertained by the simple expedient of making inquiry of the treasurer, or of examining the treasurer's records. 200 Kan. at 85. In its opinion, the Supreme Court had this to say:

"If it be argued that Pierce's address was not on file with the sheriff, or the county attorney, we reply that they and the treasurer are but arms of the same governmental body—Leavenworth County. . . . *The county may not now use the excuse that its right hand knew not what its left hand did* . . . ." (Emphasis added.) 200 Kan. at 85.

In *Goetz*, 203 Kan. 340, the first "action" was initiated by a Wichita fireman, Lawrence C. Goetz, for a disability pension as provided for by statute. After his subsequent termination of employment with the Wichita Fire Department and death, his widow, Peggy, initiated an action for a widow's pension as also, but separately, provided for by statute. In Lawrence's proceeding, it was ultimately adjudicated that Lawrence's disability—a diseased heart condition which resulted in his death—was not a service-connected disease and that, therefore, Lawrence had had no entitlement to a disability pension. In regard to the later and separate claim asserted by Peggy for a widow's pension, the Su-

preme Court observed that "the issue as to whether the husband's diseased heart condition was contracted by reason of his occupation as a fireman is the same in the widow's claim for a pension as it was when her husband made application for a pension as a fireman." 203 Kan. at 350. The Supreme Court held:

> "Here it must be conceded the widow's claim for a pension under K.S.A. 13-14a07 is a different claim or cause of action from her husband's claim for a disability pension under K.S.A. 13-14a09, but her right to a pension is dependent upon a determination of the issue whether her husband's death was the result of a disease contracted by reason of his occupation as a fireman. . . .
>
> . . . .
>
> "*We think the doctrine of collateral estoppel applies here and precludes the widow from the benefits under the statute.*" (Emphasis added.) 203 Kan. at 350.

Accordingly, Peggy's claim for widow's pension benefits was denied.

As a practical matter, Peggy's claim was denied on the ground that Peggy was "in privity" with Lawrence and that the doctrine of collateral estoppel barred her relitigation of a necessary issue determined adversely to Lawrence in the prior action and, having been so determined, she was ineligible to recover in her subsequent action. For the purpose of considering the applicability of the doctrine of collateral estoppel, the Supreme Court implicitly but necessarily found Peggy "in privity" with Lawrence.

The registration exemption issue in the case before us was determined adversely to the defendants in the prior action. There, one defendant was the Sedgwick County Treasurer and the other defendant was "The State of Kansas, State Highway Commission, Motor Vehicle Department," an appellation that in our estimation would have been better stated as "The Motor Vehicle Department of the State Highway Commission of the State of Kansas." We will refer to the second defendant simply as the Motor Vehicle Department.

In 46 Am. Jur. 2d, Judgments § 578, p. 742, it is said that the courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government. This, it seems, is in line with the previously recited language of *Pierce*, 200 Kan. at 85, saying that "[the sheriff or the county attorney] and the treasurer

are but arms of the same governmental body—Leavenworth County." In considering the case before us, we find that in the so-called subsequent case—this case brought and prosecuted by the State—we have the State itself as the object of a collateral estoppel assertion and that one of its arms, the Motor Vehicle Department, was a party against whom an adverse ruling of exemption was conclusively made in a prior case, that is, the Sedgwick County case. When this scenario is considered in the light of *Pierce* and *Goetz*, we are persuaded that in this subsequent case the State is bound by the prior case's issue determination that the Harp rig is afforded registration exemption by K.S.A. 1990 Supp. 8-128(b) and that the present prosecution of Parson is barred. Under *Goetz*, "strict privity" is not required for application of the bar of collateral estoppel and the *Pierce* "arms of the same government" principle is sufficient for the application of the collateral estoppel bar.

We conclude that, under the circumstances of this case, the trial court erred in concluding that the Harp rig is not within the registration exemption afforded by K.S.A. 1990 Supp. 8-128(b). As a matter of law, by operation of the doctrine of collateral estoppel, the Harp rig is within the registration exemption afforded by K.S.A. 1990 Supp. 8-128(b).

One further matter needs to be addressed. That is the question of whether the fact that the Sedgwick County case (the prior case) was a civil action and the present case (the subsequent case) is a criminal case prevents application of collateral estoppel. *State v. Roach*, 83 Kan. 606, 112 Pac. 150 (1910), and *Rosenberger v. Northwestern Mutual Life Ins. Co.*, 182 F. Supp. 633 (D. Kan. 1960), demonstrate that we must answer in the negative.

Consideration of *Roach* and *Rosenberger* requires our recognition that the standard of proof in a criminal action is "beyond reasonable doubt" and the standard of proof in a civil action is "preponderance of the evidence."

In *Roach*, the "prior case" was a criminal case in which the defendants Roach were acquitted. The case on appeal was the "subsequent case," an injunction action, a civil case, in which the plaintiff State appealed from judgment for the Roaches granted on the ground that that was required by the acquittal. This appears in the opinion:

"[A] judgment was rendered for the defendants expressly upon the ground that the acquittal constituted an adjudication of the controversy involved in the civil case. In order to obtain an injunction it was necessary for the state to prove that the defendants had committed the precise offense of which upon the same evidence they had been found not guilty. In the two actions the parties were the same, and the acts complained of were the same and were made illegal by the same statute. There was identity of parties and identity of issues. A final judgment in one was necessarily conclusive in the other unless this result is prevented by the fact that one action was criminal and the other civil. In order to procure a conviction on the criminal charge the state was required to establish beyond a reasonable doubt that the defendants had violated the law, while to obtain an injunction it needed only to show this by a preponderance of the evidence. This difference in the degree of proof required has generally been thought sufficient to prevent the application of the doctrine of *res judicata*." 83 Kan. at 607.

"The higher standard of proof required of the plaintiff in a criminal action is so frequently mentioned in discussions of the doctrine of *res judicata* that its bearing on the subject may be said to be generally recognized. True, its mention is often associated with other matters that would alone be controlling. But this difference between civil and criminal litigation is either without any significance at all in this connection or it is decisive, and of itself prevents either party to an action from being concluded therein by a previous judgment obtained in a proceeding where the rule of evidence was less favorable to him. We think, upon principle and authority, an acquittal in a criminal case does not for all purposes amount to an adjudication against the state that the defendant did not commit the acts charged against him. What a verdict of not guilty really decides is that the evidence does not exclude every reasonable doubt of the defendant's guilt. If in the present case the injunction action had been tried first it would hardly be seriously contended that a judgment for the plaintiff would bar a defense in the criminal action. A sufficient reason why the defendant would not be concluded by the result of the civil case is that his guilt would not have been established beyond a reasonable doubt. The consideration that protects him against the plea of *res judicata* in the one case deprives him of its benefits in the other.

". . . The acquittal in the criminal action is therefore not a bar." 83 Kan. 611-12.

In discussing *Roach*, *Rosenberger* observes:

"The intervening defendant contends that a criminal judgment cannot be res judicata in a subsequent civil action. In support of this argument State v. Roach, 1910, 83 Kan. 606, 112 P. 150, 31 L.R.A.,N.S., 670, was cited to the court. That case, however, was concerned with the propriety of admitting evidence of the acquittal in the criminal action. This is the general rule with respect to acquittals for the reason that, as stated in 3 Jones on Evidence § 639, 'a judgment of acquittal is a negative sort of conclusion

lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt.' " 182 F. Supp. at 634-35.

We are persuaded pursuant to *Roach* and *Rosenberger* that, under circumstances such as those now before us, where the prior case is civil in nature and the subsequent case is criminal in nature, estoppel operates as a bar.

Reversed and remanded for vacation of the imposed fine and for dismissal of the charge.