No. 80,545

DARIN LEE HUELSMAN, *Appellee*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellant*.

(980 P.2d 1022)

Opinion filed
June 4, 1999.

*James G. Keller*, of the Kansas Department of Revenue, argued the cause and was on the brief for appellant.

*Wm. Rex Lorson*, of Salina, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by the Kansas Department of Revenue (KDR) from the Saline County District Court's ruling that collateral estoppel barred the KDR from suspending Darin Lee Huelsman's driver's license under the Kansas Implied Consent Law.

Huelsman was arrested in Salina, Kansas, and charged in Salina Municipal Court with operating or attempting to operate a motor vehicle with an alcohol concentration of .08 or greater or, in the alternative, with operating or attempting to operate a motor vehicle while under the influence of alcohol and/or drugs. When arrested, Huelsman failed a breath test, which was certified to the KDR pursuant to K.S.A. 1996 Supp. 8-1002.

On February 20, 1997, the administrative hearing officer determined that the law enforcement officer had reasonable grounds to believe that Huelsman had been operating a vehicle while under the influence of alcohol and properly requested that Huelsman submit to an evidentiary breath test. The hearing officer entered an order suspending Huelsman's driving privileges for 1 year pursuant to K.S.A. 1996 Supp. 8-1014(b)(2).

On February 28, 1997, the Salina Municipal Court suppressed the evidence because Huelsman was arrested without probable cause. That same day, Huelsman filed a petition for review that is the subject of this appeal. The petition for review was subsequently amended to claim collateral estoppel as a result of the Salina Municipal Court's holding that Huelsman was arrested without probable cause. Then, on March 25, 1997, the Salina Municipal Court, at the request of the City of Salina, entered an order dismissing the criminal charge without prejudice.

At no time while the criminal matter was pending before the Salina Municipal Court did the city prosecutor for the City of Salina contact the KDR and its attorneys regarding the case. The KDR and its attorneys were provided no notice of any of the proceedings in the criminal matter, including the motion to suppress. The city prosecutor did not inform or consult with the KDR or its attorneys regarding the outcome of the suppression hearing or the decision not to appeal the order issued by the Salina Municipal Court. The city prosecutor was not aware of the existence of an appeal by Huelsman from the administrative hearing order.

The district court determined that the City of Salina, in the criminal DUI case, and the KDR, in the appeal from the administrative hearing, were in privity for the purposes of collateral estoppel. The district court further determined that collateral estoppel should be applied to prevent redetermination of the reasonable grounds issue in the appeal from the administrative hearing, based upon the Salina Municipal Court's determination of the probable cause issue in the criminal matter. KDR appealed.

## Kansas Implied Consent Law

K.S.A. 1996 Supp. 8-1001 is the implied consent law. K.S.A. 1996 Supp. 8-1001(a) provides in pertinent part:

"Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs."

K.S.A. 1996 Supp. 8-1001(b) contains the "reasonable grounds" language and states:

"A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a) if the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, . . . and one of the following conditions exists: (1) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both . . . ."

## Collateral Estoppel

In *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988), the court stated:

"Under Kansas law, collateral estoppel may be invoked where the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment. [Citation omitted.]"

Whether a party is in privity with another for purposes of collateral estoppel is a policy decision.

In its memorandum decision, the district court ruled that "reasonable grounds" in K.S.A 8-1001 *et seq.* has been equated with probable cause. The district court reasoned that in order to sustain the administrative finding that Huelsman's driver's license should be suspended, it must be shown that the arresting officer had probable cause to conclude that Huelsman was operating a vehicle under the influence of alcohol. The district court found that "[t]his issue has already been fully litigated in the Municipal Court of Salina, Kansas, and it has been determined that there was not probable cause. Under the doctrine of collateral estoppel, the [KDR]

is precluded from relitigating this issue, and judgment should be issued in favor of [Huelsman]." The district court further ruled:

"[T]he prior judgment was entered on the merits which determined the rights and liabilities of the parties, that is, the Municipal Court Judge found that there was no probable cause to arrest the defendant.

"The second issue is whether or not the parties are in privity. It was determined in *City of Manhattan v. Huncovsky*[, 22 Kan. App. 2d 189, 913 P.2d 227 (1996)] that the [KDR] and the City of Manhattan were in privity. The court finds that the [KDR] and the City of Salina are in privity.

"The third point is that the issue litigated must have been determined and necessary to support the judgment. As stated in K.S.A. 8-1001, one of the requirements which must be met by the [KDR] to sustain the administrative order is that there was reasonable cause, that is probable cause, to arrest the defendant.

"The court finds that it has already been determined that there was not, and therefore, there is no basis on which the order can be sustained."

### The district court further reasoned:

"It is important for the court to note that the *Huncovsky* case set forth all the rules of collateral estoppel and stated that collateral estoppel would apply in situations where those elements are met. The court did decide, however, that it may not apply in the particular situation presented in *Huncovsky* because of the quality and extensiveness of the procedures at the administrative hearing. What the *Huncovsky* case determined was that the doctrine of collateral estoppel would not apply to bar relitigation of issues in the subsequent *criminal* proceeding when they have been [litigated] at a prior *administrative hearing*. This was simply because these administrative hearings were held without attorneys representing both sides, and further, that they were held in front of an administrative hearing officer rather than a judge.

"This is not the case here. The plaintiff seeks the application of the doctrine of collateral estoppel based upon the results of a hearing before a judge where both sides were represented by counsel and a full and extensive hearing was held.

"Collateral estoppel does apply. The issue of probable cause was fully litigated and determined adversely to the City of Salina. The City of Salina is in privity with the [KDR], and therefore, there is no need to relitigate the issue. It has already been resolved in the plaintiff's favor herein, and his appeal should be sustained and the order of the [KDR] set aside."

We believe the trial court was wrong because of the privity issue and also because the disparity between the quality and extensiveness of the criminal and administrative procedures justifies an exception to the rule of collateral estoppel.

The term "arms of the same governmental body" first appears in *Pierce v. Board of County Commissioners*, 200 Kan. 74, 85, 434 P.2d 858 (1967), and was used to describe two arms of Leavenworth County—the sheriff and the county treasurer.

In *State v. Parson*, 15 Kan. App. 2d 374, 808 P.2d 444 (1991), defendant Richard Parsons was convicted in a state court for operating an unregistered vehicle. Parson's employer had previously obtained a judgment in a declaratory judgment action against the Kansas Motor Vehicle Department that the vehicle was not required to be registered. The Court of Appeals' panel held the State, as a prosecutor, and the Kansas Motor Vehicle Department were both arms of the same government—the State—and, thus, in privity under *Pierce*.

The Court of Appeals subsequently applied the "arms of the same government" test to cases prosecuted in a municipal court by a city attorney and an administrative proceeding by the Kansas Motor Vehicle Department in *State v. Kolde*, 18 Kan. App. 2d 525, 527, 855 P.2d 498 (1993), *rev. denied* 253 Kan. 862 (1993), and *City of Manhattan v. Huncovsky*, 22 Kan. App. 2d 189, 913 P.2d 227, *rev. denied* 260 Kan. 992 (1966).

We hold the Court of Appeals erred in holding privity existed in *Kolde* and *Huncovsky* as between a city and a defendant in a municipal court proceeding and that same defendant and a state administrative agency in an administrative proceeding. It is a stretch to hold the city prosecutor and a state administrative agency are different arms of the same governmental body. The fact the city exists and functions by virtue of laws adopted by the State is not determinative. What is determinative is that the information held by each of the parties is not readily available to both parties and neither party may have any knowledge that the other party is prosecuting, or is contemplating, a proceeding that would affect the other party if we held them to be in privity.

In *State v. Counseller*, 22 Kan. App. 2d 155, 158-59, 912 P.2d 757, *rev. denied* 260 Kan. 997 (1996), the court discussed the difference between "probable cause" and "reasonable grounds" and stated:

"While 'reasonable grounds' is synonymous in meaning with 'probable cause,' (see *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 766-67, 758 P.2d 226 [1988], *rev. denied* 243 Kan. 777 [1988]), one may have reasonable grounds to believe that a person was operating a vehicle under the influence but not have the probable cause required to arrest under K.S.A. 1995 Supp. 8-1001(b)(1). An arresting officer may formulate reasonable grounds sufficient to request a test under the statute before or after arrest and, under K.S.A. 1995 Supp. 8-1001(b)(2), without any arrest whatsoever."

Thus, the *Counseller* court held the requirement under the implied consent law that the arresting officer have " 'reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both,' may be formulated after the arrestee is in custody for any offense arising from the operation or attempted operation of a motor vehicle." 22 Kan. App. 2d 155, Syl. ¶ 4.

In *State v. Dewey*, 22 Kan. App. 2d 963, 925 P.2d 843, *rev. denied* 261 Kan. 1085 (1996), Dewey consented to a blood test after he was arrested on suspicion of driving under the influence. The hearing officer at the administrative hearing dismissed the case because there was no proof the laboratory that analyzed the test was appropriately certified to do such tests. Dewey brought a motion in limine to suppress the results of the blood alcohol test prior to the criminal proceedings in district court. The district court granted the motion, based on collateral estoppel, and the State brought an interlocutory appeal.

Dewey argued that the quality and extensiveness of the proceeding at the administrative driver's license hearing and the district court criminal proceeding are the same. He claimed the only difference in the two proceedings was that the "defendant has the burden of proof to keep the evidence out at the administrative hearing whereas the State has the burden of proof to bring the evidence in at the criminal trial." 22 Kan. App. 2d at 965. The court rejected the defendant's argument, finding that the defendant's own argument defeated a showing of sameness of the quality of proceedings because the "required burden of proof creates a significant difference in the proceedings." 22 Kan. App. 2d at 965.

Although the issue in *Dewey* was whether an admissibility decision at an administrative driver's license hearing had a preclusive

effect in a subsequent criminal proceeding and not whether an admissibility decision at a criminal proceeding has a preclusive effect in a subsequent appeal of an administrative driver's license hearing, the same reasoning can be applied to the present case. The *Dewey* court found that collateral estoppel did not apply to bar the subsequent criminal proceeding because the administrative proceeding is not of a "like quality and extensiveness as a district court criminal proceeding." 22 Kan. App. 2d at 966. In the present case, the fact that the criminal proceeding occurred before the appeal of the administrative finding was heard does not change the essential holding of *Dewy* that collateral estoppel does not apply when the two proceedings are not of a like quality and extensiveness.

The purpose of the DUI action is punishment. The license suspension action, however, is remedial, with the purpose of protecting the public by removing dangerous drivers from the roads. This court analyzed the purpose of a driver's license suspension action in *State v. Mertz*, 258 Kan. 745, 760, 907 P.2d 847 (1995), and held that the sanction was remedial because it protects the public welfare and revokes a privilege which is being abused. The *Mertz* court stated:

"[T]he suspension action in this case serves a purpose which is solely remedial, in that the sanction's purpose is to protect the public. The suspension sanction quickly removes dangerous drivers from the street to prevent them from injuring anyone. Any harmful effect which the sanction may have on the driver simply indicates that the sanction may appear to be punitive from the driver's perspective. Such harmful effects do not necessarily indicate that the sanction carries purposes of punishment such as deterrence and retribution. While certainly the sanction *may* be interpreted as having punitive effects, this does not mean the sanction *must* be interpreted as having punitive effects. [Citation omitted.]" 258 Kan. at 760.

K.S.A. 1996 Supp. 8-1001(i) provides that "[t]his act is remedial law and shall be liberally construed to promote public health, safety and welfare." The criminal DUI statute, however, as with any criminal statute, is to be strictly construed. "The general rule is that a criminal statute must be strictly construed in favor of the accused." *State v. Taylor*, 262 Kan. 471, Syl. ¶ 5, 939 P.2d 904 (1997). The

burden to produce evidence is on the State in the DUI criminal case, whereas the burden is on the licensee in the administrative action and subsequent appeal of that action.

Since the requirement concerning custody of the licensee for testing purposes is broader than the "probable cause to arrest" standard under the criminal DUI laws, the issues concerning such custody are not the same.

In *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 79 L. Ed. 2d 361, 104 S. Ct. 1099 (1984), the Bureau of Alcohol, Tobacco, and Firearms seized a cache of firearms from the home of a man named Mulcahey. Mulcahey was subsequently indicted on charges that he had knowingly engaged in the business of dealing in firearms without a license. At the criminal trial, Mulcahey admitted that he had no license to deal in firearms and that he had bought and sold firearms during the period set forth in the indictment. His defense was that he had been entrapped into making the illegal firearms transactions. The jury returned a verdict of not guilty.

Following the acquittal on the criminal charges, the United States instituted an in rem action for forfeiture of the seized firearms. Mulcahey asserted the defenses of res judicata and collateral estoppel on the basis of his earlier criminal acquittal. The *One Assortment of 89 Firearms* Court stated:

"Most recently, in *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232[, 34 L. Ed. 2d 438, 93 S. Ct. 489] (1972) *(per curiam)*, the Court held that a civil action for forfeiture of a ring and stones was not barred by the owner's prior acquittal on charges of willfully and knowingly, with intent to defraud the United States, smuggling articles into the United States without complying with customs procedures. Reaffirming the principles articulated in *Helvering v. Mitchell*, [303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630 (1938)], the Court reasoned that the difference between the burdens of proof in the criminal and civil cases precluded the application of the doctrine of collateral estoppel. Double jeopardy was equally inapposite, the Court continued, because the forfeiture asserted against the ring and stones was a civil, not a criminal, sanction. The Court distinguished *Coffey [v. United States*, 116 U.S. 436, 29 L. Ed. 684, 6 S. Ct. 437 (1886)] on the ground that acquittal on the criminal charges in *One Lot Emerald Cut Stones* did not necessarily resolve the issues in the later forfeiture action. 409 U.S., at 235, n. 5." 465 U.S. at 360.

Thus, the *One Assortment of 89 Firearms* Court held:

"[A]n acquittal of a criminal charge does not automatically bar an action to enforce sanctions by way of forfeiture of goods or other civil penalties. Whatever the validity of *Coffey* on its facts, its ambiguous reasoning seems to have been a source of confusion for some time. As long ago as *Mitchell*, this Court was urged to disapprove *Coffey* so as to make clear that an acquittal in a criminal trial does not bar a civil action for forfeiture even though based on the identical facts. Indeed, for nearly a century, the analytical underpinnings of *Coffey* have been recognized as less than adequate. The time has come to clarify that neither collateral estoppel nor double jeopardy bars a civil, remedial forfeiture proceeding initiated following an acquittal on related criminal charges. To the extent that *Coffey v. United States* suggests otherwise, it is hereby disapproved." 465 U.S. at 361.

We hold under the facts of this case that privity does not exist and, in any event, the disparity between the quality and extensiveness of the criminal and administrative procedures justifies an exception to the rule of collateral estoppel.

Reversed.

SIX, J., concurring: I concur with the majority's rationale supporting the conclusion that collateral estoppel does not apply here. I disagree with the majority's holding that privity does not exist.

ALLEGRUCCI, J., joins the foregoing concurring opinion.