IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,862

BRENDA L. ROSENDAHL,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

SYLLABUS BY THE COURT

1.

In a driver's license suspension case, when the only issue before the court is whether a law enforcement officer had reasonable grounds to request an evidentiary breath test and the facts are undisputed, an appellate court has de novo review.

2.

K.S.A. 2015 Supp. 8-1020(h)(2) sets forth an exclusive list of issues that may be addressed at an administrative hearing on a driver's license suspension when the officer certifies that a person has failed a breath test which includes whether a law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol.

3.

Kansas courts evaluate reasonable grounds by looking to probable cause standards. Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime.

1

4.

An officer cannot insulate his or her assessment of the existence of reasonable grounds from review or criticism by a district or appellate court by maintaining a posture of willful ignorance on a suspect's post-driving alcohol consumption. Reasonableness is key. If the situation is such that a reasonable law enforcement officer would investigate, it behooves an actual officer to do so. This is particularly true when an officer's personal observations of the scene or the suspect suggest the possibility of post-driving alcohol consumption. Such consumption is a factor to be considered and evaluated. Reasonable grounds to believe a driver is under the influence demands thoughtful examination of the behavior of a driver before, during, and after he or she is behind the wheel.

5.

Under the facts and circumstances of this case, the district court erred in giving post-driving alcohol consumption evidence controlling weight on the issue of whether the officer had reasonable grounds to request a breath test. The officer did not ignore or maintain a posture of willful ignorance toward evidence suggesting the possibility of post-driving alcohol consumption.

6.

The imposition of a $50 administrative hearing fee under K.S.A. 2015 Supp. 8-1020(d)(2) is unconstitutional as set forth in *Creecy v. Kansas Dept. of Revenue*, 310 Kan. ____, ____, P.3d ____ (2019) (No. 117,035, this day decided).

Appeal from Miami District Court; STEVEN C. MONTGOMERY, judge. Opinion filed August 23, 2019. Affirmed in part and reversed in part.

*Joanna Labastida*, of Legal Services Bureau, Kansas Department of Revenue, argued the cause, and *Dwight R. Carswell*, assistant solicitor general, was with her on the brief for appellant.

*Ronald P. Wood*, of Clyde & Wood, L.L.C., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MALONE, J.: The Kansas Department of Revenue (KDOR) appeals the district court's decision reversing the administrative suspension of Brenda Rosendahl's driving privileges and finding the statutorily required $50 fee for an administrative hearing to challenge the suspension of driving privileges is unconstitutional. We reverse the district court's reversal of Rosendahl's suspension and reinstate the suspension. We affirm the district court's finding that the $50 hearing fee is unconstitutional for the reasons stated in *Creecy v. Kansas Dept. of Revenue*, 310 Kan. ____, ____, P.3d ____ (2019) (No. 117,035, this day decided).

FACTUAL AND PROCEDURAL OVERVIEW

On December 12, 2015, at 5:35 p.m., Miami County Sheriff's Deputy Jacob Bell was dispatched to a possible noninjury accident. Dispatch advised that the driver might be intoxicated. Bell arrived at the scene at the same time as Sergeant Gray. Bell noticed a car just off the side of the roadway and a pickup near where he pulled onto the scene. Bell asked an unidentified man next to the pickup what happened, but the man just mumbled something and left.

Bell turned his attention to Rosendahl, who was speaking with Sergeant Gray. According to Bell, Rosendahl said she drove off the road after missing her turn at a dark curve. Bell did not know what time the accident occurred, but he assumed it happened shortly before he was dispatched at 5:35 p.m. because it gets dark in December shortly

3

after 5:00 p.m. Bell noticed Rosendahl had bloodshot eyes, slurred her words, and had the odor of alcohol coming from her breath.

Bell asked Rosendahl what she had had to drink, and she admitted to having one beer several hours earlier. Bell described the area of the accident as an industrial-type with no visible restaurants, bars, or liquor stores nearby. Bell testified that he had no indication that Rosendahl had consumed alcohol post-driving; however, he did not explicitly ask Rosendahl about post-driving alcohol consumption.

Bell conducted standardized field sobriety tests which indicated that Rosendahl was impaired, and she failed the preliminary breath test (PBT). Bell arrested Rosendahl for driving under the influence and transported her to the police station. Rosendahl submitted to an Intoxilyzer 8000 breath test which showed her breath alcohol concentration was 0.209. On the Officer's Certification and Notice of Suspension Form (DC-27), Bell certified that reasonable grounds existed to believe Rosendahl had been operating a vehicle while under the influence of alcohol and her test results showed an alcohol concentration of .08 or greater.

Rosendahl requested an administrative hearing to challenge her license suspension and paid the $50 fee for the hearing. The administrative hearing officer affirmed the suspension, finding Bell had reasonable grounds to believe Rosendahl was operating a vehicle under the influence of alcohol.

Rosendahl filed an amended petition for trial de novo and judicial review of her license suspension alleging *inter alia* that 1) she was arrested and tested without reasonable grounds; and 2) submission of the required $50 administrative hearing fee before the hearing was a denial of due process and equal protection.

4

At trial de novo before the district court, Bell testified as summarized above. Rosendahl and an acquaintance, Alan Macek, testified that her intoxication was due to alcohol consumption after her car left the roadway and before law enforcement made contact with her.

According to Rosendahl, she lived about two miles outside Osawatomie. Between 4 and 4:30 p.m., she was driving home from running errands in Osawatomie. She saw a deer out of the corner of her eye that caused her to jerk and drive into the ditch. She could not get her car out of the ditch and had left her phone at home, so she walked to a nearby auto body shop operated by Macek to call her husband Gary. Macek offered Rosendahl a drink which she accepted because she was shaken up from the accident and did not plan to drive home. Macek gave Rosendahl a 16-ounce cup of straight raspberry vodka, which she finished before her husband arrived at her car.

Rosendahl testified she saw officers coming down the road after Macek and her husband got her car positioned where Macek could pull it out of the ditch. She told her husband to return home. Rosendahl said she "vaguely" remembered talking with the officers about how dark the corner was but stated that she "had a pretty good buzz on" at that time. When the officers asked her if she had been drinking, she thought they meant before her car went into the ditch, so she said she had consumed a beer several hours earlier. Rosendahl admitted she did not tell the officers that a deer caused her to go in the ditch or that she had consumed alcohol after the accident. She testified that the only way Bell would have learned about her post-driving alcohol consumption was by talking to Macek.

Macek corroborated Rosendahl's account that she had arrived at his body shop after her car went into the ditch, that he gave her a 16-ounce Solo cup of raspberry vodka, and that he helped Gary pull Rosendahl's car out of the ditch. Macek testified he was still

5

there when the police arrived, but he returned to his body shop shortly thereafter. Macek did not tell the officers that he gave Rosendahl vodka after the accident at that time.

With Rosendahl's and Macek's testimony in mind, Bell testified that he did not know whether Rosendahl had gone to Macek's body shop. Bell also testified that he did not recall seeing Rosendahl with a red Solo cup in her hands.

Because of a recording malfunction, a portion of the district court trial transcript was unavailable, so the parties prepared a statement of proceedings in lieu of the balance of the transcript. See Supreme Court Rule 3.04(a) (2018 Kan. S. Ct. R. 23). The statement of proceedings provides that after the parties presented evidence, during a recess and off the record, the district court opined about a possible estoppel issue. After the recess, KDOR argued Rosendahl should be estopped from claiming for the first time at the administrative hearing and subsequently in the district court that she had consumed alcohol post-driving.

The district court reversed the administrative agency decision based on Rosendahl's intervening alcohol consumption, finding *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 281 P.3d 125 (2012), and the later Court of Appeals' decision in that case on remand from this court, *Swank v. Kansas Dept. of Revenue*, No. 102,223, 2012 WL 4676985 (Kan. App. 2012) (unpublished opinion), controlled.

The parties' prepared statement of proceedings provides:

"The district court summarized its factual findings; specifically that the Petitioner had run off the road in or near her hometown so she was, therefore, familiar with her surroundings. She had gone to Alan Macek's mechanic shop, and had been offered alcohol, which she consumed. When the police arrived, she was clear[ly] intoxicated. However, the police did not specifically investigate whether she had consumed alcohol

6

post-driving, and that should have factored into their reasonable grounds determination. The officers knew the Petitioner had left her vehicle and did not inquire as to where she had been after the car had gone into the ditch. The court believed that the officer should have inquired more about her opportunity to drink with persons in the area, including Mr. Macek and anyone else who might have intervened since the accident.

> "The district court held that it appeared from the *Swank* opinion that if there was *any* opportunity to consume alcohol post-driving that the officer must consider that in his or her reasonable grounds determination."

The statement of proceedings further provides that the district court speculated about the estoppel issue, but did not rule on it, suggesting that if the case was appealed, the Court of Appeals might direct the parties on the issue.

The district court also found the $50 filing fee for an administrative hearing required by K.S.A. 2015 Supp. 8-1020(d)(2) is unconstitutional, but that this issue was moot as to Rosendahl because she paid the fee.

KDOR timely appeals to this court. Based on the district court's finding that K.S.A. 2015 Supp. 8-1020(d)(2) is unconstitutional, this court has jurisdiction under K.S.A. 60-2101(b) ("An appeal from a final judgment of a district court in any civil action in which a statute of this state or of the United States has been held unconstitutional shall be taken directly to the supreme court.").

7

*Standard of Review*

The district court's journal entry concluded the facts were not in dispute. Neither party challenges this finding on appeal. We agree that the facts are not in dispute; therefore, this court has de novo review. See *Swank*, 294 Kan. at 881 ("Only when there is no factual dispute does an appellate court exercise de novo review.").

*Analysis*

K.S.A. 2015 Supp. 8-1020(h)(2) sets forth an exclusive list of issues that may be addressed at an administrative hearing on a driver's license suspension when the officer certifies that a person has failed a breath test. See *Swank*, 294 Kan. at 875. That list includes "whether . . . [a] law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol." K.S.A. 2015 Supp. 8-1020(h)(2)(A). See also K.S.A. 2015 Supp. 8-1001(b) (providing that law enforcement officer shall request a person to submit to a breath or other bodily substance test to determine the presence of alcohol or drugs if certain conditions exist and "at the time of the request, the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol . . . .").

Following an administrative hearing, when a licensee challenges the agency's decision in district court "the licensee shall have the burden to show that the decision of the agency should be set aside." K.S.A. 2015 Supp. 8-1020(q). Rosendahl did not argue in the district court or before this court that evidence of her post-driving alcohol consumption was relevant to other issues enumerated in K.S.A. 2015 Supp. 8-1020(h)(2).

Indeed, the only issue presented to us for decision is whether Bell had reasonable grounds to request that Rosendahl submit to an evidentiary breath test.

Nevertheless, the dissent argues we should hold the district court was right for the wrong reason, under an issue not presented to or decided by the district court. We decline this course, as our Legislature has directed that judicial review of driver's license suspensions "shall be in accordance with the Kansas judicial review act" (KJRA). K.S.A. 2018 Supp. 8-259. Under the KJRA, "[a] petition for judicial review shall set forth: . . . *the petitioner's reasons* for believing that relief should be granted." (Emphasis added.) K.S.A. 2018 Supp. 77-614(b)(6).

> "'In other words, a petition for judicial review must set forth the specific issues that will be raised before the district court. [Citation omitted.] This court has indicated this requirement serves two purposes: (1) It puts the district court and administrative agency on notice as to what issues will be reviewed, and (2) it assures that only issues that were raised at the administrative hearing will be considered on appeal.'" *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 320, 393 P.3d 601 (2017) (quoting *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 405, 204 P.3d 562 [2009]).

See also *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 462-63, 980 P.2d 1022 (1999) ("The burden to produce evidence is on the State in the DUI criminal case, whereas the burden is on the licensee in the administrative action and subsequent appeal of that action."); *Henke v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 8, 13, 246 P.3d 408 (2010) ("In other words, the licensee bears the initial burden of putting on evidence showing that at least one of the issues listed in the applicable subsection of K.S.A. 2008 Supp. 8-1020(h) has not been satisfied."); cf. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) ("[T]his argument is raised for the first time on appeal and should fail on that basis alone.").

Unlike the dissent, as an abstract proposition, we see no absurdity in recognizing that a person can drink alcohol to the point of impairment both *before* and after operating a vehicle. Therefore, we will not consider a statutory means for relief that Rosendahl failed to request and then impugn the administrative agency for not presenting evidence to rebut the unknown issue. In summary, under the procedural posture of this case, we will not address the issue raised by the dissent sua sponte that has not been argued, briefed, raised, or even considered by any party, and which could result in a ruling that may have unforeseen consequences in future cases.

Turning to the issue before us, "Kansas courts evaluate 'reasonable grounds' by looking to probable cause standards." *Swank*, 294 Kan. 871, Syl. ¶ 3. See also *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010) ("This court has found the term 'reasonable grounds' synonymous in meaning with 'probable cause,' but in doing so has noted an officer may have reasonable grounds to believe a person is operating a vehicle under the influence sufficient to request a test under the statute—but not have the probable cause required to make an arrest under K.S.A. 8-1001."). "Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013) (citing *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 [2012]).

The district court found that this court's opinion in *Swank* and the later Court of Appeals opinion in that case after remand from this court controlled. The district court reasoned that "it appeared from the *Swank* opinion that if there was *any* opportunity to consume alcohol post-driving, that the officer must consider that in his or her reasonable grounds determination." Therefore, the district court reversed the suspension because of

10

Rosendahl's intervening alcohol consumption. We hold that the district court misapplied *Swank*; therefore, we will review and apply that opinion to the undisputed facts here.

*Swank* considered as a matter of first impression whether evidence of post-driving alcohol consumption falls within the scope of K.S.A. 8-1020(h)(2). There, an officer responded to a call reporting Swank for driving recklessly. The officer spoke to the caller, who reported that Swank had chased the caller in her car and was highly intoxicated. The officer left to look for Swank and found her a few blocks away pulled into a driveway. Swank was already out of her car and the officer saw no alcohol in her hands as he approached her. According to the officer, Swank admitted she had been drinking and admitted following the other driver. The officer did not ask Swank if she consumed alcohol post-driving. Swank testified before the district court that she consumed three beers earlier in the evening. Swank also testified that when she got out of her car, she drank from a half-pint bottle of "Hot Damn." She said she consumed no alcohol other than the Hot Damn after driving, but admitted ownership of an open can of cold beer the officer found in her car during a search conducted after she submitted to a breath test. 294 Kan. at 872-73.

This court held that the Court of Appeals erred as a matter of law in refusing to consider Swank's testimony about her post-driving alcohol consumption because that fact was potentially relevant to the reasonable grounds issue under K.S.A. 8-1020(h)(2)(A). *Swank*, 294 Kan. at 879-80. *Swank* recognized that another panel of the Court of Appeals had so held, reasoning "'[t]he more alcohol a person drinks after driving but before testing, the more unreasonable may be the officer's grounds for belief that the person drove while under the influence of alcohol.'" 294 Kan. at 879 (quoting *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 893-94, 256 P.3d 876 [2011]).

11

*Swank* also looked to courts in Missouri and Nevada which had likewise recognized the potential relevance of post-driving alcohol consumption in similar circumstances. *Swank* recognized that these courts were "careful to note that it is the information known to the officer at the time that matters and that courts should avoid giving post-driving alcohol consumption controlling weight." 294 Kan. at 880 (discussing *Warner v. Missouri Director of Revenue*, 240 S.W.3d 745, 751 [Mo. App. 2007]; *Weaver v. State, Dept. of Motor Vehicles*, 121 Nev. 494, 498-99, 117 P.3d 193 [2005]).

*Weaver*, the Nevada case discussed in *Swank*, supports KDOR's position here. There, an officer arrived at the scene of the accident and the driver exhibited signs of intoxication. When the officer asked the driver how much he had had to drink, the driver said he walked home after the accident and had two beers. At the administrative hearing, the driver testified that he had several drinks at his home after the accident. The Nevada Supreme Court held "[t]hat [the driver] chose later to modify his story and testify at the hearing that when he returned home after the accident he consumed four or five shots of tequila and five or six beers has no impact upon the inquiry into the reasonableness of the officer's beliefs because this was not part of the information evaluated by [the officer] at the scene." 121 Nev. at 499.

*Swank* said this point was well taken, but it added that the reasonableness of the officer's actions is key:

> "[A]n officer cannot insulate his or her assessment of the existence of reasonable grounds from review or criticism by a district or appellate court by maintaining a posture of willful ignorance on a suspect's post-driving alcohol consumption. Reasonableness is key. If the situation is such that a reasonable law enforcement officer would investigate, it behooves an actual officer to do so. This is particularly true when an officer's personal observations of the scene or the suspect suggest the possibility of post-driving alcohol consumption. Such consumption is a factor to be considered and evaluated, not ignored.

12

". . .'"Reasonable grounds to believe" a driver is under the influence . . . demands consideration of the behavior of a driver before, during, and after he or she is behind the wheel.' [Citation omitted.]" 294 Kan. at 880.

*Swank* remanded to the Court of Appeals with directions that it was legally permissible for the district court to consider the driver's testimony about her post-driving alcohol consumption and any evidence that the officer did or did not investigate it thoroughly. 294 Kan. at 882-83. On remand, the Court of Appeals affirmed the district court's order that the officer lacked reasonable grounds. 2012 WL 4676985, at *4.

Applying *Swank* here, Deputy Bell did not "insulate his . . . assessment of the existence of reasonable grounds . . . by maintaining a posture of willful ignorance" with respect to the possibility of post-driving alcohol consumption. See *Swank*, 294 Kan. at 880. When Bell arrived, Rosendahl was outside her vehicle at the scene of the accident. The accident took place in an industrial-type area and Bell saw no restaurants, bars, or liquor stores nearby. Rosendahl told Bell that she drove her car into the ditch after missing her turn at a dark curve, so Bell reasonably inferred that the accident occurred shortly before he was dispatched at 5:35 p.m. Bell noticed Rosendahl had bloodshot eyes, slurred her words, and had the odor of alcohol coming from her breath. Bell asked Rosendahl what she had had to drink, and Rosendahl told Bell she had one beer several hours earlier. Standardized field sobriety tests indicated that Rosendahl was impaired, and Rosendahl failed a PBT. Despite her undisputed intoxication, neither Rosendahl nor Macek told Bell that she had consumed 16 ounces of straight vodka after the accident. Bell testified that he had no indication that Rosendahl had consumed alcohol post-driving nor that she had been at Macek's shop.

Under the facts and circumstances of this case, we hold the district court erred in giving post-driving alcohol consumption evidence controlling weight on the issue of whether the officer had reasonable grounds to request a breath test. Bell did not ignore or maintain a posture of willful ignorance toward evidence suggesting the possibility of post-driving alcohol consumption. See *Swank*, 294 Kan. at 880.

Considering the totality of the circumstances, when Bell asked Rosendahl to submit to a breath test, Bell had reasonable grounds to believe Rosendahl was operating a vehicle under the influence of alcohol. Based on this decision, we need not reach KDOR's argument that Rosendahl should be equitably estopped from raising post-driving alcohol consumption for the first time at her administrative hearing.

CONSTITUTIONALITY OF $50 ADMINISTRATIVE HEARING FEE

KDOR argues the district court erred in finding K.S.A. 2015 Supp. 8-1020(d)(2) unconstitutional. This issue was decided adversely to KDOR's position in *Creecy v. Kansas Dept. of Revenue*, 310 Kan. ____, ____, P.3d ____ (2019) (No. 117,035, this day decided). For the reasons set forth in *Creecy*, we hold the district court here reached the correct result.

The judgment of the district court reversing the administrative suspension of Rosendahl's driving privileges is reversed. The judgment of the district court holding K.S.A. 2015 Supp. 8-1020(d)(2) is unconstitutional is affirmed, but this judgment does not impact Rosendahl's suspension. KDOR's suspension of Rosendahl's driving privileges is reinstated.

14

BILES, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]


* * *


STEGALL, J., concurring in part and dissenting in part: I agree with the majority that the officer had reasonable grounds to request a breath test from Rosendahl. I also agree with our holding that the administrative hearing fee set forth in K.S.A. 2015 Supp. 8-1020(d)(2) is unconstitutional. See *Creecy v. Kansas Dept. of Revenue*, 310 Kan. ___, ___ P.3d ___, (No. 117,035, this day decided) (Stegall, J., concurring in the result). I disagree, however, with the result. I would reverse the Court of Appeals and affirm the district court as being right for the wrong reason.

The basic problem with the majority's holding is that while the officer did have reasonable grounds to request the test, the inquiry under K.S.A. 2015 Supp. 8-1020(h)(2) should not stop there. Critical facts surfaced at the administrative hearing that were unavailable to the officer when he reasonably requested the breath test. Importantly, the fact that Rosendahl consumed a significant amount of alcohol *after* driving is now undisputed. This, together with the lack of any evidence of intoxication while driving, means there is no probable cause to believe that Rosendahl was driving under the influence. Instead, the totality of the evidence suggests that Rosendahl failed the breath test because she consumed alcohol after the accident.

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 117,862 vice Justice Biles under the authority vested in the Supreme Court by K.S.A. 20-2616.

15

In my view, reading K.S.A. 2015 Supp. 8-1020(h)(2) as a whole requires the Department of Revenue to prove that the driver was operating or attempting to operate a vehicle while impaired. Whether "the person was operating or attempting to operate a vehicle" is a fact to consider within "the scope of the hearing." K.S.A. 2015 Supp. 8-1020(h)(2)(H). For subsection (h)(2)(H) to have relevance during an administrative license suspension hearing, it must mean whether the person was operating or attempting to operate a vehicle *while impaired*. Otherwise, subsection (h)(2)(H) has no meaning. The only alternative meaning—that the person was operating or attempting to operate a vehicle at some time before becoming impaired—is absurd. But we must interpret statutes to avoid absurd results. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013) ("[W]e must construe statutes to avoid unreasonable or absurd results, and we presume the legislature does not intend to enact useless or meaningless legislation.").

In fact, the outcome today is just such an absurd result. Rosendahl's license is being suspended even though the undisputed facts make it clear she was not driving under the influence. By effectively reading K.S.A. 2015 Supp. 8-1020(h)(2)(H) out of the statute, we have approved a license suspension solely because the officer had reasonable grounds to request a breath test at the scene of the accident—even though everyone now knows that Rosendahl failed the test because she consumed alcohol after the accident. The Legislature did not intend this result. A conclusion supported by a plain reading of K.S.A. 2015 Supp. 8-1020(h)(2), aided by a reasonable interpretation of the statute as a whole so as to avoid an absurd result.

The majority is at great pains to justify ignoring the substance of the case on preservation grounds. My colleagues object that I have reached out to grab an issue "not presented to or decided by the district court," which also "has not been argued, briefed,

16

raised, or even considered by any party" on appeal. Slip op. at 9-10. But in my view, this puts form over substance in a way courts should avoid. See *State v. Tafoya*, 304 Kan. 663, 670, 372 P.3d 1247 (2016) ("'The law of this state is realistic. Substance prevails over form.'"). Rosendahl's argument has always been that she was not driving while intoxicated, and all the evidence in the record supports her contention. So we should not ignore this central fact of the case because Rosendahl's attorney framed the argument in terms of reasonable suspicion rather than as a failure of proof under K.S.A. 2015 Supp. 8-1020(h)(2)(H). The issue *was* raised, albeit under a different theory of relief. Finally, the majority insists that it has merely reached the common-sense conclusion that "a person can drink alcohol to the point of impairment both before and after operating a vehicle." Slip op. at 10. Well, yes. So what? That case is not this case. Here, there is no evidence Rosendahl was impaired before driving.

For this reason, I would affirm the district court's reversal of the agency's decision to suspend Rosendahl's license.

ROSEN and JOHNSON, JJ., join in the foregoing concurring and dissenting opinion.