THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
RANDY J. GREGG, Defendant-Appellee.

Second District   No. 2—87—0679

Opinion filed June 30, 1988.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel J. Cain, of Sreenan, Cain & Sullivan, P.C., of Rockford, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)), the State appeals from a trial court order which suppressed evidence pertaining to the chemical analysis of blood taken from the defendant, Randy Gregg. On appeal, the State contends that the trial court incorrectly interpreted section 11—501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2) and section 510.110 of the Illinois Administrative Code (77 Ill. Adm. Code 510.110 (1985)) in granting defendant's motion to suppress. We reverse.

On November 6, 1986, defendant was arrested for driving under the influence of alcohol in violation of section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 11—501). Defendant was stopped as he was leaving his car, which had gone off the road and into a ditch. Although a different set of officers initially responded to the scene, Deputy Liston of the Winnebago County sheriff's department took charge of the investigation.

Liston observed that defendant had difficulty producing his driver's license, maintaining his balance and finding his footing. Liston also detected a moderate odor of alcohol on defendant's breath. Although Liston suggested that defendant go to the hospital to receive treatment for a cut on his head, defendant refused and asked to be taken home. Defendant then told Liston that he had been out drinking and was on his way home. Eventually, defendant agreed to be treated for his injuries and was transported to St. Anthony's Hospital in Rockford, Illinois. After finishing his work at the scene, Liston went to the hospital and placed defendant under arrest. After being read the implied consent warning, defendant acknowledged that he understood the warning and consented to giving a blood sample.

Sherry Falls, who was a medical technologist with a degree in medical technology and also a trained phlebotomist, took defendant's blood sample. A phlebotomist is one who is trained to draw blood. Falls testified that she was called by an emergency room nurse and

told to draw blood from a patient. After speaking with Liston, Falls proceeded to draw a blood sample from defendant. Falls further testified that her supervisor in the emergency room was Dr. Tuschen.

On cross-examination, defense counsel elicited the following testimony from Falls:

"Q. [Defense counsel] And did a police officer tell you that he wanted you to draw blood?

A. Uh—huh.

Q. And you said that a nurse called you; is that right?

A. Yes. Right.

Q. She called you on the telephone?

A. Yes.

Q. Did she tell you who to see?

A. No. She just said, 'Come to the emergency room to draw some blood.'

Q. When you went to the emergency room did you see a police officer?

A. Yes.

Q. And did you ever talk to the nurse again in regard to that?

A. I can't recall if I ever did.

Q. You do this basically on your own, do you not?

A. No. We are directed by the officer more or less.

Q. By the police officer?

A. Yes.

Q. So basically speaking then at that time when you came out you were acting under his direction?

A. Well, I guess so.

Q. Okay. You didn't further talk to the doctor or to a nurse or anything like that, did you?

A. I may have.

Q. But you don't recall?

A. I don't recall."

On redirect, Falls stated that other doctors and nurses were present in the emergency room when she drew defendant's blood sample. Falls then stated that Dr. Tuschen was the doctor responsible for supervising emergency room procedures.

In closing argument, defendant asserted that Falls was acting under the direction of Deputy Liston, not a licensed physician. Therefore, defendant concluded, Falls failed to comply with the Department of Public Health (Department) regulations which require that a phlebotomist act under the direction of a licensed physician. Defendant re-

quested that his blood test be found inadmissible as evidence of his intoxication.

The State asserted that Falls was acting under the direction of a licensed physician. In the State's view, even though Falls did not consult with a licensed physician, she constructively acted under the direction of a licensed physician, and a licensed physician was present in the emergency room. The State further asserted that the Department's regulations should not be interpreted as requiring that a licensed physician be present when a phlebotomist draws a blood sample.

In granting defendant's motion to suppress, the trial court stated:

"The question is whether it's [a] general direction or a specific direction. And I find that in order to give the adequate interpretation promulgated by these rules that these rules are promulgated to insure that a sample be properly taken that they mean that it be under the specific direction of a physician. I realize that hospital procedures sometimes require that things be done through agents; for example, directions from a physician to a R.N. would require that the R.N. direct others to do things. But I will require and hold that the Rule does require that there be a specific direction with respect to a specific patient when a phelobotomist [sic]—when a phlebotomist is authorized. I don't interpret the statute to mean under the general direction as to the general duties of a phlebotomist. Therefore, there being no proof that there was a specific direction to draw blood from a physician there is no finding of the direction required by the statute or by the Rule."

In relevant part, section 11—501.2 of the Illinois Vehicle Code states:

"When a person shall submit to a blood test at the request of a law enforcement officer under the provisions of Section 11—501.1, only a physician authorized to practice medicine, a registered nurse or other qualified person approved by the Department of Public Health may withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content therein. This limitation shall not apply to the taking of breath or urine specimens." Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)(2).

Section 510.110(a)(2) of the Illinois Administrative Code states:

"When a person is arrested and the arresting officer requests a blood test to determine the amount of alcohol or other drugs present, the blood sample shall be collected according to the

following procedure(s) \* \* \*

2) The blood sample shall be collected per venipuncture by a physician licensed to practice medicine by a registered nurse or by a trained phlebotomist acting *under the direction of a licensed physician.*" (Emphasis added.) 77 Ill. Adm. Code 510.110(a)(2) (1985).

This appeal raises the sole issue whether the phrase "under the direction of a licensed physician" means under a physician's general direction or specific direction. As explained below, we determine that section 510.110(a)(2) requires a trained phlebotomist to act under the general direction of a licensed physician, and, therefore, we reverse the trial court's suppression order.

■■■ It is fundamental in statutory construction that courts shall ascertain and give effect to the intent of the legislature, and the language of the statute is to be considered the surest indication of legislative intent. (*People v. Murphy* (1985), 108 Ill. 2d 228, 231-32.) Section 11—501.2 was intended to ensure the reliability of evidence introduced in prosecutions for driving under the influence. (*People v. Emrich* (1986), 113 Ill. 2d 343, 349.) Section 11—501.2 states that a blood analysis must be done according to the Department's regulations. (See Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2.) The failure to comply with the Department's regulations renders the evidence of a blood analysis inadmissible. *Emrich*, 113 Ill. 2d at 350.

■■ Section 510.10 (77 Ill. Adm. Code 510.10 *et seq.* (1985)) does not provide a definition for the phrase "under the direction of a licensed physician." While we recognize that section 510.110(a)(2) uses the phrase "under the direction of a licensed physician," we interpret the words "under the direction of" to be akin to the words "direct supervision." According to several other sections of the Department's regulations, direct supervision means:

"[W]ork is performed under the guidance and direction of a supervisor who is responsible for the work, who plans work and methods, who is available on short notice to answer questions and deal with problems that are not strictly routine, who regularly reviews the work performed, and who is accountable for the results." See 77 Ill. Adm. Code 300.330, 330.330, 350.330, 370.240, 390.330 (1985).

Nowhere in the definition of direct supervision is a requirement that a supervisee act only under the specific order of the supervisor. Therefore, we do not interpret section 510.110(a)(2) as requiring a trained phlebotomist to act under the specific order of a licensed physician; instead, the requirements of section 510.110(a)(2) are satisfied

when the licensed physician supervises the work which a trained phlebotomist performs. Furthermore, our interpretation of section 510.110(a)(2) is consistent with the purpose of the Department's regulations, which were created to ensure that a blood analysis is done accurately and uniformly. In light of the complex and extensive procedures already required in performing a blood analysis, we do not believe that requiring a trained phlebotomist to act only under the direct order of a licensed physician, as opposed to acting under a physician's supervision, would sufficiently enhance the accuracy or uniformity of blood analysis.

■ ■ "A reviewing court will not disturb a trial court's determination on a motion to suppress evidence unless it is manifestly erroneous." (*People v. Neal* (1985), 109 Ill. 2d 216, 218.) Here, the trial court incorrectly interpreted section 510.110(a)(2) as requiring Falls to act under the direct order of a licensed physician. Falls testified that Dr. Tuschen was her supervisor and that Tuschen was responsible for supervising emergency room procedures. Falls further testified that other doctors and nurses were present in the emergency room when she drew defendant's blood sample. While Falls acknowledged that she was acting at the direction of Deputy Liston, we believe Falls merely meant that Liston directed her to defendant so that a blood sample could be drawn. Consequently, we conclude that Falls satisfied the requirements of section 510.110(a)(2), and the trial court's decision to the contrary is manifestly erroneous.

Accordingly, for the reasons expressed above, the trial court's order suppressing defendant's blood analysis is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

LINDBERG, P.J., and DUNN, J., concur.