(203 P.3d 52)
No. 100,375

STATE OF KANSAS, *Appellant,* v. JEREMIAH STEGMAN, *Appellee.*

—

Opinion filed March 20, 2009.

*Jennifer R. O'Hare*, county attorney, and *Stephen N. Six*, attorney general, for appellant.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellee.

Before BUSER, P.J., ELLIOTT, and GREEN, JJ.

Green, J.: Jeremiah Stegman was charged with driving under the influence (DUI) of alcohol. Stegman moved to suppress the blood test results, arguing that the medical assistant who withdrew the blood was not qualified to do so. The trial court determined that, as a matter of law, the medical assistant was not qualified to withdraw blood under the relevant statute. On appeal, the State contends that the trial court improperly suppressed the blood test results. We disagree. Accordingly, we affirm.

On December 16, 2006, Stegman was arrested in Lincoln County, Kansas, for driving under the influence (DUI) of alcohol. After being provided the oral and written warnings under the Kansas Implied Consent Law, see K.S.A. 2006 Supp. 8-1001(f), Stegman agreed to submit to a blood test. Merilynn McBride, a "medical assistant," withdrew blood from Stegman using a kit furnished by the Kansas Bureau of Investigation (KBI). After she was done, McBride gave the sample to Trooper Ryan Wolting of the Kansas Highway Patrol, and he sent the sample to the KBI laboratory for testing. The results of the test showed that the alcohol concentration in Stegman's blood was over the legal limit.

Later, Stegman moved to suppress the test results, arguing that McBride was not qualified under K.S.A. 2006 Supp. 8-1001(c) to withdraw his blood. That statute states:

"If a law enforcement officer requests a person to submit to a test of blood under this section, the withdrawal of blood at the direction of the officer may be performed only by: (1) A person licensed to practice medicine and surgery or a person acting under the supervision of any such licensed person; (2) a registered nurse or a licensed practical nurse; or (3) any qualified medical technician, including, but not limited to, an emergency medical technician-intermediate or mobile intensive care technician, as those terms are defined in K.S.A. 65-6112, and amendments thereto, or a phlebotomist." K.S.A. 2006 Supp. 8-1001(c).

The State countered Stegman's motion by arguing that McBride was qualified to withdraw blood under K.S.A. 2006 Supp. 8-1001(c)(3) because a medical assistant is similar to the professions listed in that subsection of the statute.

Instead of conducting an evidentiary hearing, the parties stipulated to numerous facts and submitted the matter to the trial court for a decision. The stipulated facts are as follows:

"1. On December 16, 2006, Jeremiah Stegman was arrested in Lincoln County, Kansas, for driving under the influence of alcohol.

"2. After Stegman was arrested for driving under the influence he was transported to the Lincoln County jail for processing under the Kansas Implied Consent Law.

"3. Stegman, after being provided his oral and written warnings pursuant to the Kansas Implied Consent Law, agreed to submit to a blood test as requested by the officer.

"4. Merilynn McBride responded to the Lincoln County jail after being called by Trooper Wolting, the arresting officer.

"5. Ms. McBride's actual title with the hospital is that of a 'medical assistant' and this is also the title that she gives as her employment status with the hospital.

"6. Ms. McBride graduated from Brown Mackie College with what she describes as a 'medical assistant' degree and certificate.

"7. Ms. McBride, per her own admission and description, is not a medical technician, an emergency medical technician, nor a phlebotomist, but instead, as she describes in her own words as a 'medical assistant'.

"8. Ms. McBride drew a sample of Mr. Stegman's blood with the KBI kit provided to her and gave the sample of blood to Trooper Wolting pursuant to the Kansas Implied Consent Law.

"9. The sole issue for the Court to determine in this case is whether or not Ms. McBride [is] qualified to draw blood under K.S.A. 8-1001(c)."

Later, the trial court granted Stegman's motion to suppress. In its findings of fact, the trial court stated: "Merilynn McBride has many years of experience working at the Lincoln County Hospital and has drawn many blood samples throughout the years. McBride is experienced at and an expert at drawing blood." Despite making this finding (which was not one of the facts stipulated to by the parties), the trial court granted Stegman's motion to suppress, finding that the list of people who may withdraw blood under K.S.A. 2006 Supp. 8-1001(c)(3) did not include medical assistants. Therefore, the trial court concluded that, as a matter of law, McBride was not qualified to withdraw blood under the statute. Specifically, in reaching this conclusion, the trial court stated:

"7. Stegman contends that a medical assistant does not satisfy the above requirements. The State urges this court to adopt a definition of phlebotomist as 'one who is experienced and [an] expert at drawing blood'.

"8. No evidence was presented that McBride is a certified medical technician. No evidence was presented that McBride is a certified phlebotomist. Facts were presented that McBride has much experience in the field of drawing blood.

"9. K.S.A. 8-1001(c) clearly defines those individuals qualified to draw blood for DUI testing purposes. McBride is a medical assistant with years of experience in drawing blood. McBride's experience, however, does not qualify her as a statutorily defined qualified medical technician or phlebotomist."

DID THE TRIAL COURT ERR WHEN IT SUPPRESSED THE RESULTS OF STEGMAN'S BLOOD ALCOHOL TEST AFTER IT CONCLUDED THAT THE PERSON WHO WITHDREW

STEGMAN'S BLOOD WAS NOT QUALIFIED TO DO SO UNDER K.S.A. 2006 Supp. 8-1001(c)?

The parties submitted stipulated facts to the trial court. Generally, such stipulations bind the parties as judicial admissions. Moreover, a reviewing court is generally bound by stipulations of facts. "When parties submit stipulated facts to a tribunal and the tribunal does not allow the parties to withdraw the stipulations, the parties are subject to those stipulations, and a trial court or appellate court must render judgment based on those stipulated facts." *Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, Syl. ¶ 1, 202 P.3d 7 (2009).

In its brief, the State argues the trial court erred when it held that McBride, a "medical assistant," was not qualified to withdraw blood under K.S.A. 2006 Supp. 8-1001(c)(3). The State contends that the trial court incorrectly interpreted the statute by narrowly construing it and determining that medical assistants were not included in the list of medical professions authorized to withdraw blood. The State believes that a medical assistant is substantially similar to the professions listed in K.S.A. 2006 Supp. 8-1001(c)(3), and therefore, qualified to withdraw blood for purposes of testing its alcohol content.

As mentioned earlier, K.S.A. 2006 Supp. 8-1001(c) states in part:

"If a law enforcement officer requests a person to submit to a test of blood under this section, the withdrawal of blood at the direction of the officer may be performed only by . . . (3) any qualified medical technician, including, but not limited to, an emergency medical technician-intermediate or mobile intensive care technician, as those terms are defined in K.S.A. 65-6112, and amendments thereto, or a phlebotomist."

While this case was pending on appeal, the legislature amended K.S.A. 8-1001(c) (and added another subsection to the statute) during the 2008 session. See L. 2008, ch. 170 sec. 1. The pertinent part of that statute now reads:

"If a law enforcement officer requests a person to submit to a test of blood under this section, the withdrawal of blood at the direction of the officer may be performed only by . . . (3) any qualified medical technician, including, but not limited to, an emergency medical technician-intermediate or mobile intensive care technician, as those terms are defined in K.S.A. 65-6112, and amendments

thereto, *authorized by medical protocol or (4) a phlebotomist."* (Emphasis added.) K.S.A. 2008 Supp. 8-1001(c)(3) and (4).

In *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 904, 189 P.3d 1157 (2008), our Supreme Court stated that "[w]hen an applicable statute is amended while an appeal is pending, and counsel for both sides have had an opportunity to brief and argue the amended statute, the appellate court will consider and construe the amended version of the statute." This court has provided the parties an opportunity to submit supplemental briefs on the applicability of K.S.A. 2008 Supp. 8-1001(c) to this case. Therefore, this court will determine whether the statute retroactively applies to this case.

Normally, when a statute is amended, the change is applied prospectively. Nevertheless, if the amendment is procedural or remedial in nature and does not prejudice the substantive rights of the parties, then the amended statute is to be applied retroactively to cases pending on appeal. *Tonge v. Werholtz*, 279 Kan. 481, 486, 109 P.3d 1140 (2005). As related to criminal law and procedure, substantive laws define criminal acts and prescribe punishments. Procedural laws provide or regulate the steps by which a defendant is tried and punished. *Werholtz*, 279 Kan. at 487.

The 2008 amendment to K.S.A. 8-1001(c) neither changed the definition of a criminal act nor prescribed a new punishment. Furthermore, K.S.A. 8-1001 *et seq.* is a remedial law. K.S.A. 2008 Supp. 8-1001(v); *Ashley v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 421, 428, 166 P.3d 1060 (2007). The 2008 amendment does not prejudice Stegman's substantive rights; it simply "clarifies" who can withdraw blood for purposes of testing its alcohol concentration. Therefore, the 2008 amendment retroactively applies to this case.

In order to determine whether the trial court was right when it suppressed the results of Stegman's blood alcohol test, this court must consider two questions. First, what medical professions— besides those specifically listed in the statute—are authorized to withdraw blood under K.S.A. 2008 Supp. 8-1001(c)(3) and (4)? This is a question of law over which this court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). The answer

to this question shapes the analysis of the second question: Does McBride's education and experience, as shown in facts stipulated to by the parties, qualify her to withdraw blood under K.S.A. 2008 Supp. 8-1001(c)(3) and (4)? Because this appeal asks us to construe a statutory scheme based on stipulated facts, our standard of review is de novo. See *Double M Constr.*, 288 Kan. at 271. ("The standard of appellate review is de novo for cases decided by the district court based upon documents and stipulated facts.").

Recently, our Supreme Court stated:

"When [an appellate court is] called upon to interpret a statute, [it must] first attempt to give effect to the intent of the legislature as expressed through the language enacted. When a statute is plain and unambiguous, [the appellate court does] not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. [The appellate court] need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that [the appellate court] move[s] to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79-80, 169 P.3d 1025 (2007).

Again, K.S.A. 2008 Supp. 8-1001(c) states in part:

"If a law enforcement officer requests a person to submit to a test of blood under this section, the withdrawal of blood at the direction of the officer may be performed only by . . . (3) any qualified medical technician, including, but not limited to, an emergency medical technician-intermediate or mobile intensive care technician, as those terms are defined in K.S.A. 65-6112, and amendments thereto, authorized by medical protocol or (4) a phlebotomist."

In addition to qualified medical technicians and phlebotomists, K.S.A. 2008 Supp. 8-1001(c)(1) and (2) also authorizes medical doctors, physician's assistants, people acting under the direction of medical doctors and physician's assistants, registered nurses, and licensed practical nurses to withdraw blood for purposes of testing its alcohol concentration. The list of people authorized to withdraw blood under K.S.A. 2008 Supp. 8-1001(c) indicates that the legislature wanted to ensure that blood withdraws would be performed in such a way as to protect the health of the individual whose blood was being withdrawn, "to guard against infection and pain, and to assure the accuracy of the test." *State v. Winquist*, 247 N.W.2d 256, 258-59 (Iowa 1976) (interpreting an Iowa statute similar to

K.S.A. 2008 Supp. 8-1001[c]); K.S.A. 2008 Supp. 8-1001(v) ("This act is remedial law and shall be liberally construed to promote public health, safety and welfare.").

The term "qualified medical technician" in K.S.A. 2008 Supp. 8-1001(c)(3) is not defined by statute. Nevertheless, the legislature, by using the phrase "including, but not limited to," intended for emergency medical technician-intermediates, mobile intensive care technicians, and other similarly trained medical professionals to be considered qualified medical technicians. Additionally, the legislature, by removing the term "phlebotomist" from subsection (c)(3) and placing it in its own subsection, arguably narrowed the definition of "qualified medical technician." Compare K.S.A. 2007 Supp. 8-1001(c) with K.S.A. 2008 Supp. 8-1001(c).

An " '[e]mergency medical technician-intermediate' " is defined as "a person who holds an emergency medical technician intermediate certificate issued pursuant to [K.S.A. 65-6101 *et seq.*]." K.S.A. 2008 Supp. 65-6112(i). A " '[m]obile intensive care technician' " is defined as "a person who holds a mobile intensive care technician certificate issued pursuant to [K.S.A. 65-6101 *et seq.*]." K.S.A. 2008 Supp. 65-6112(o). Interestingly, those two terms, along with other medical professions, are included within the definition of "attendant" found in K.S.A. 2008 Supp. 65-6112(d). That statute defines " '[a]ttendant' " as "a first responder, emergency medical technician, emergency medical technician-intermediate, emergency medical technician-defibrillator or a mobile intensive care technician . . . ." K.S.A. 2008 Supp. 65-6112(d).

All individuals wishing to become attendants must obtain certification under K.S.A. 65-6101 *et seq.* See K.S.A. 2008 Supp. 65-6112(d), (g), (h), (i), (j), and (o). K.S.A. 2008 Supp. 65-6111(8) and (9) authorize the Kansas Board of Emergency Medical Services (Board) to approve all training programs and examinations for the certification of attendants. Under this authorization, the Board has promulgated numerous regulations which set forth the curriculum and examinations that a person must complete and pass in order to be certified as an attendant. K.A.R. 109-8-1; K.A.R. 109-10-1 through K.A.R. 109-10-6. Furthermore, the Board's regulations

also set forth how one maintains his or her certification as an attendant. See K.A.R. 109-5-1 through K.A.R. 109-5-4.

Based on K.S.A. 2008 Supp. 8-1001(c)(3)'s reference to K.S.A. 2008 Supp. 65-6112, we conclude that, in the very least, the legislature intended for the term "qualified medical technician" to mean any person who is certified as an attendant under K.S.A. 65-6101 *et seq*. At the most, the term means any medical professional or individual—not specifically listed in K.S.A. 2008 Supp. 8-1001(c)—whose training is similar to that required for an attendant under K.S.A. 65-6101 *et seq*.

K.S.A. 2008 Supp. 8-1001(c)(3) also requires that the "qualified medical technician" withdrawing blood be authorized to do so under applicable "medical protocol." K.S.A. 2008 Supp. 65-6112(n) defines medical protocol as

"written guidelines which authorize attendants to perform certain medical procedures prior to contacting a physician, or professional nurse authorized by a physician. These protocols shall be developed and approved by a county medical society or, if there is no county medical society, the medical staff of a hospital to which the ambulance service primarily transports patients."

Therefore, even if a person is considered a "qualified medical technician" based on the earlier definition, applicable medical protocol must also authorize that individual to withdraw blood from a person suspected of DUI.

Moving on to the next subsection, K.S.A. 2008 Supp. 8-1001(c)(4) authorizes a "phlebotomist" to withdraw blood for purposes of testing a person's blood alcohol concentration. The term "phlebotomist" is not defined in Kansas statutes or administrative regulations. Furthermore, neither Kansas statutes nor regulations provide any insight into how one becomes a phlebotomist. A "phlebotomist" is generally defined as "[o]ne trained and skilled in phlebotomy." PDR Medical Dictionary 1481 (3d ed. 2006). "Phlebotomy" is defined as "[i]ncision into or needle puncture of a vein for the purpose of drawing blood." PDR Medical Dictionary 1481 (3d ed. 2006); see also *People v. Gregg*, 171 Ill. App. 3d 1076, 1077, 526 N.E.2d 537 (1988) ("A phlebotomist is one who is trained to draw blood.").

Though Kansas does not license or certify phlebotomists, there is no doubt that in this state, there are people who work in the medical field who have been given the title "phlebotomist" by their respective employers. See *City of Salina v. Martin*, 18 Kan. App. 2d 284, 849 P.2d 1010 (1993) (determining whether a phlebotomist working at a hospital in Salina was a "qualified medical technician" under the then applicable version of K.S.A. 8-1001[c][3]). The question then arises: Does an individual's job title solely determine whether he or she is a phlebotomist under K.S.A. 2008 Supp. 8-1001(c)(4), or can a person with a different job title (*i.e.*, "medical assistant") be considered a "phlebotomist" if he or she has received training in withdrawing blood?

In *Winquist*, the Iowa Supreme Court had to address a similar question when it was asked to determine whether Weakley, the individual who withdrew Winquist's blood for purposes of testing his blood alcohol concentration, should be considered a "medical technologist," one of the three categories of people (physicians and registered nurses being the others) authorized to withdraw blood under Iowa's implied consent law. Winquist argued that Weakley was not a medical technologist because he was not certified by the American Society of Clinical Pathologists nor did he possess the training which would allow him such certification. 247 N.W.2d at 258.

In rejecting this argument, the Iowa Supreme Court wrote:

"Unlike the situation of physicians and registered nurses, [Iowa law] does not provide for state licensing of medical technologists. Nor do statutory educational or training standards exist. The test to determine whether a person holding himself out as a medical technologist is a medical technologist within the meaning of [Iowa's implied consent law] is whether a satisfactory showing can be made that he has sufficient training in the withdrawal of blood to accomplish the legislative objectives of protecting the individual's health, guarding against infection and pain, and assuring the accuracy of the test, all in accordance with accepted medical standards. [Citations omitted.] The concern is with the competence of the person withdrawing the blood rather than with an occupational label he may have been awarded by a private association." 247 N.W.2d at 259.

The same reasoning used by the Iowa Supreme Court to determine who can qualify as a "medical technologist" under Iowa's implied consent law should also be applied to determining who can

qualify as a "phlebotomist" under K.S.A. 2008 Supp. 8-1001(c)(4). If the person in question has sufficient training in the withdrawal of blood to accomplish the legislative objectives of protecting the individual's health, guarding against infection and pain, and assuring the accuracy of the test, all in accordance with accepted medical standards, then, for purposes of K.S.A. 2008 Supp. 8-1001(c)(4), that person is a phlebotomist regardless of whether he or she is called a "phlebotomist" by his or her employer.

As mentioned earlier, the parties in this case stipulated to numerous facts and submitted the case to the trial court for decision. "When a defendant challenges the admissibility of evidence by filing a motion to suppress prior to trial, the prosecution has the burden of proving that the evidence is admissible." *Martin*, 18 Kan. App. 2d at 285. In regards to McBride's education and training, the parties stipulated to the following:

"5. Ms. McBride's actual title with the hospital is that of a 'medical assistant' and this is also the title that she gives as her employment status with the hospital.

"6. Ms. McBride graduated from Brown Mackie College with what she describes as a 'medical assistant' degree and certificate.

"7. Ms. McBride, per her own admission and description, is not a medical technician, an emergency medical technician, nor a phlebotomist, but instead, as she describes in her own words as a 'medical assistant'.

"8. Ms. McBride drew a sample of Mr. Stegman's blood with the KBI kit provided to her and gave the sample of blood to Trooper Wolting pursuant to the Kansas Implied Consent Law."

As stated earlier, when stipulations of facts are agreed to by the parties, a trial court or an appellate court must render a judgment based on those stipulated facts.

Now we turn our attention to the State's argument in this case. The State asks this court to hold that McBride's training as a medical assistant is comparable to the training that of a phlebotomist would undergo.

Nevertheless, the stipulations of facts are devoid of any description of McBride's training as a medical assistant. Moreover, there is no stipulation that sets out McBride's skill or experience in the withdrawal of blood from an individual. Indeed, the stipulations of facts expressly state that McBride is not a phlebotomist. The State,

however, seeks to be excused from the binding effect of the stipulations of facts. This court cannot endorse such an approach.

When all is considered, the stipulations of facts are simply insufficient to show that McBride was qualified under K.S.A. 2008 Supp. 8-1001(c)(3) or (4) to withdraw Stegman's blood. There is nothing in the stipulated facts that describes the type of training McBride received from Brown Mackie College and whether it is comparable to the training required for attendants under K.S.A. 65-6101 *et seq.* Nor is there anything in the stipulated facts to indicate that applicable medical protocol authorized McBride to perform the blood withdrawal. Therefore, the stipulated facts do not support a finding that McBride is qualified to withdraw blood under K.S.A. 2008 Supp. 8-1001(c)(3). Similarly, there is nothing in the stipulated facts to show that McBride has received any training in the withdrawal of blood. Therefore, the stipulated facts also do not support a finding that McBride is a phlebotomist under K.S.A. 2008 Supp. 8-1001(c)(4).

Briefly, we note that the trial court made factual findings which were not included in the facts stipulated to by the parties. Specifically, the trial court found: "Merilynn McBride has many years of experience working at the Lincoln County Hospital and has drawn many blood samples throughout the years. McBride is experienced at and an expert at drawing blood." Additionally, the court found that "McBride is a medical assistant with years of experience in drawing blood." If these facts would have been stipulated to by the parties, our determination may have been different. It, however, seems that the trial court made these factual findings after it took judicial notice of McBride's experience. A trial court simply cannot do this. See K.S.A. 60-409; *State v. Maxwell*, No. 93,791, unpublished opinion filed March 10, 2006 (rejecting the notion that a trial court can take judicial notice of a lab technician's qualifications for purposes of finding that he was qualified to withdraw blood under then applicable K.S.A. 8-1001[c]). Based on the stipulated facts, the State failed to carry its burden of proof to show that McBride was qualified to withdraw blood under K.S.A. 2008 Supp. 8-1001(c)(3) and (4). As a result, the State's argument fails.

Affirmed.