(246 P.3d 408)
No. 102,486 [1]

TATE W. HENKE, *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellee*.

---

[1] **REPORTER'S NOTE:** Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish pursuant to Rule 7.04 (2009 Kan. Ct. R. Annot. 54). The published version was filed with the Clerk of the Appellate Courts on December 14, 2010.

Opinion filed September 17, 2010.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*James G. Keller*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before STANDRIDGE, P.J., GREEN and HILL, JJ.

STANDRIDGE, J.: Tate W. Henke appeals the district court's order affirming the administrative suspension of his driver's license after his arrest for driving under the influence (DUI). For the reasons stated below, we affirm.

## FACTS

After arresting Henke for DUI in May 2008, the officer transported Henke to the police station, where a person unknown to Henke drew a sample of his blood at the direction of the arresting officer. Later testing of Henke's blood sample by a forensic toxicologist with the Kansas Bureau of Investigation (KBI) confirmed an alcohol concentration of .191.

As a result, Henke was served in August 2008 with the arresting officer's certification that Henke had failed his blood test and a notice that his driving privileges would be suspended in 30 days unless he timely requested a hearing. Henke retained counsel, who timely requested an administrative hearing with the Kansas Department of Revenue (KDR) to challenge the license suspension.

In December 2008, an administrative hearing officer (AHO) conducted a hearing by telephone conference call, after which she entered an order affirming the administrative action to suspend Henke's driving privileges. No transcript of that hearing appears in the record. The AHO's handwritten notes, however, are in the record and reflect that Henke raised two issues at the hearing before the AHO: (1) the officer lacked reasonable suspicion to request testing and (2) the lab technician who drew Henke's blood—identified in the notes as "Michael Gamboa—lab tech?"—was not qualified to do so. Henke timely petitioned the district court for

review of the AHO's order, identifying both issues he raised before the AHO as the issues to be addressed before the district court.

At the beginning of the April 17, 2009, hearing before the district court, Henke's counsel clarified that he was only pursuing the issue of whether the individual who drew Henke's blood was statutorily qualified to do so. See K.S.A. 2008 Supp. 8-1001(c) (listing the medical professionals who are qualified to draw blood for purposes of alcohol and drug testing). A dispute ensued about who bore the burden of proof on that issue.

The district court agreed with the KDR and ruled Henke bore the burden of making a prima facie showing that the person who drew his blood was not statutorily qualified. Henke's counsel then proffered that the only evidence he would present on that issue would be Henke's testimony that his blood was drawn at the law enforcement center, as opposed to a hospital, and that Henke did not know the person who drew his blood or that person's qualifications. The KDR did not dispute Henke's proffer and moved to admit the blood test results and certificate of analysis. Henke's counsel did not object to admission of those documents, but he suggested those documents were not relevant to his issue of whether the individual was qualified to draw Henke's blood or that the blood was drawn in a proper manner.

The district court found that Henke's proffer was insufficient to show that the person who drew his blood was not qualified to do so under the statute. Thus, the district court affirmed the administrative order suspending Henke's driving privileges. Henke appeals.

## ANALYSIS

Henke's sole argument on appeal is that the district court erred in holding that he had the initial burden to prove that the person who drew his blood was not qualified to do so under K.S.A. 2008 Supp. 8-1001(c). Henke insists that once he raised the issue, the KDR had the burden to prove that the person who drew his blood was qualified to do so under the statute in order for the results of the test to be admitted into evidence.

This issue involves statutory interpretation—a question of law over which this court has unlimited review. See *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

When, as here, an officer has certified under K.S.A. 2008 Supp. 8-1002(a)(2) that a driver's licensee failed a blood test, K.S.A. 2008 Supp. 8-1020(h)(3) limits the scope of an administrative review to determining the existence of the following issues:

"(A) A law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both, or had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system;

"(B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;

"(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;

"(D) the testing equipment used was reliable;

"(E) the person who operated the testing equipment was qualified;

"(F) *the testing procedures used were reliable*;

"(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's blood; and

"(H) the person was operating or attempting to operate a vehicle." (Emphasis added.) K.S.A. 2008 Supp. 8-1020(h)(3).

The AHO's notes from the administrative hearing indicate that Henke raised two issues at the teleconference hearing: (1) the officer lacked reasonable suspicion to request testing; and (2) the "lab tech [was] not qualified to do blood draw." The first issue was clearly within the authorized scope of the hearing. See K.S.A. 2008 Supp. 8-1020(h)(3)(A). The AHO's notes suggest she interpreted Henke's second issue as a challenge to the reliability of the testing procedures used. In other words, the AHO treated the second issue as being within the scope of her review under K.S.A. 2008 Supp. 8-1020(h)(3)(F).

We agree with the AHO's conclusion that such an issue can be addressed under K.S.A. 2008 Supp. 8-1020(h)(3)(F). Issues concerning how a blood sample was collected naturally fall under the umbrella issue of whether the testing procedures used were reli-

able. See *State v. Stegman*, 41 Kan. App. 2d 568, 573, 203 P.3d 52 (2009) ("The list of people authorized to withdraw blood under K.S.A. 2008 Supp. 8-1001[c] indicates that the legislature wanted to ensure that blood withdraws would be performed in such a way as to protect the health of the individual whose blood was being withdrawn, 'to guard against infection and pain, and *to assure the accuracy of the test.*' [Citations omitted.]" [Emphasis added.]). Collecting a blood sample is the first "procedure" in the testing process. Furthermore, because Henke raised the issue at the administrative hearing of whether the person who drew his blood was qualified to do so under K.S.A. 2008 Supp. 8-1001(c), he properly preserved the issue for further judicial review. See *Rebel v. Kansas Dept. of Revenue*, 288 Kan. 419, 428, 204 P.3d 551 (2009) ("[I]n an appeal from a decision by an administrative agency, a party may only argue the issues raised at the administrative hearing.").

As mentioned above, the AHO affirmed the suspension of Henke's driving privileges, and Henke filed a petition for judicial review, again raising the issue of whether the person who drew his blood was qualified to do so under K.S.A. 2008 Supp. 8-1001(c). K.S.A. 2008 Supp. 8-1020(p) directs, in pertinent part, that the district court's review of the suspension

"shall be in accordance with this section and the act for judicial review and civil enforcement of agency actions. . . . The action for review shall be by trial de novo to the court and the evidentiary restrictions of subsection (l) shall not apply to the trial de novo. The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension or suspension and restriction under the provisions of this act. If the court finds that the grounds for action by the agency have been met, the court shall affirm the agency action."

See also K.S.A. 2008 Supp. 8-259(a) ("The action for review [of an order of suspension under implied consent law] shall be by trial *de novo* to the court. The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension, cancellation or revocation under the provisions of this act.").

Although these statutes provide that the hearing before the district court is de novo, K.S.A. 2008 Supp. 8-1020(q) specifically states that at the hearing, "the licensee *shall have the burden to show that the decision of the agency should be set aside.*" (Emphasis added.) See also K.S.A. 77-621(a)(1) ("The burden of proving the invalidity of agency action is on the party asserting invalidity."). In other words, the licensee bears the initial burden of putting on evidence showing that at least one of the issues listed in the applicable subsection of K.S.A. 2008 Supp. 8-1020(h) has not been satisfied. See *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 122-23, 200 P.3d 496 (2009) (where licensee argues testing procedures used to administer breath test did not substantially comply with procedures set out by the Kansas Department of Health and Environment, see K.S.A. 2008 Supp. 8-1020(h)(2)(F), licensee has initial burden to show violation of KDHE testing procedures actually occurred during testing which "strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results"); see also *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 462-63, 980 P.2d 1022 (1999) (comparing criminal DUI action to administrative license suspension action and pointing out "burden to produce evidence is on the State in the DUI criminal case, whereas the burden is on the licensee in the administrative action and subsequent appeal of that action"); *Angle v. Kansas Dept. of Revenue,* 12 Kan. App. 2d 756, 760-61, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988) (concluding plaintiff seeking review of administrative order suspending license by filing of petition for review carries "burden of proof at the de novo hearing before the district court [under K.S.A. 77-621(a)(1)] irrespective of any amendment to K.S.A. 1985 Supp. 8-1001").

Based on the clear and unambiguous language of K.S.A. 2008 Supp. 8-1020(q), as well as the case law interpreting such language, we find the district court did not err in concluding that Henke had the initial evidentiary burden to show that the person who drew his blood was not qualified to do so under K.S.A. 2008 Supp. 8-1001(c). Because Henke failed to make this initial showing, the

district court properly affirmed the administrative order suspending Henke's driving privileges.

Affirmed.