(263 P.3d 828)
No. 104,837

MALORIE CRAWFORD, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee*.

Opinion filed September 9, 2011.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before GREENE, C.J., Marquardt and STANDRIDGE, JJ.

STANDRIDGE, J.: Malorie Crawford appeals the administrative suspension of her driving privileges by the Kansas Department of Revenue (KDR).

## FACTS

On April 5, 2009, Crawford was arrested for driving under the influence of alcohol and subsequently failed a breath test on an Intoxilyzer 8000 machine. As a result, Crawford received an Officer's Certification and Notice of Suspension (commonly known as a DC-27 form) informing her that unless she requested an administrative hearing to challenge the information certified in the DC-27 form, her driving privileges would be suspended in 30 days.

On April 6, 2009, Crawford requested an "in person" administrative hearing pursuant to K.S.A. 2008 Supp. 8-1020(d). The KDR notified Crawford by a letter dated April 28, 2009, that it had received her request for a hearing and that it would notify her when her hearing was scheduled. Furthermore, the letter informed Crawford that her driving privileges remained valid until after the completion of the hearing.

Due to " 'budgetary constraints,' " the KDR temporarily delayed all in-person driver's license suspension hearings outside the 100-mile radius of Topeka between April and July 2009. Crawford subsequently received a letter from the KDR dated September 11, 2009, setting her in-person administrative hearing for November 12, 2009, in Hays, Kansas. The November 12 hearing was held as scheduled, and the administrative hearing officer (AHO) thereafter affirmed the suspension of Crawford's driving privileges. Crawford filed a timely petition for judicial review.

In district court, Crawford filed a motion to dismiss the KDR's suspension of her driving privileges based solely on the facts noted above, all of which were included in the documents attached to the KDR's answer to Crawford's petition for judicial review or in the stipulation of facts submitted by the parties. In support of dismissal, Crawford argued the KDR's decision to temporarily delay all in-person administrative hearings between April and July 2009 for geographic areas outside the 100-mile radius of Topeka violated the statutory mandate in K.S.A. 2008 Supp. 8-1020(d) to set ad-

ministrative hearings "forthwith" and violated her constitutional right to equal protection of the laws.

The district court denied Crawford's motion to dismiss and affirmed the suspension of her driving privileges. In denying the request for dismissal, the court found no K.S.A. 2008 Supp. 8-1020(d) violation because the delay in conducting the administrative hearing was reasonable due to KDR budget constraints imposed by the legislature during the relevant time period. The court also found no evidence that Crawford was prejudiced by the delay. Finally, the court found no merit to Crawford's equal protection argument. Specifically, the court found the delay in conducting in-person administrative hearings during the relevant time period for geographic areas outside the 100-mile radius of Topeka was reasonably related to achieving the legitimate objective of keeping agency expenditures from exceeding the newly imposed agency budgetary constraints.

## ANALYSIS

On appeal, Crawford argues the district court erred in rejecting the statutory and constitutional arguments she presented in support of dismissal. Because the evidence presented on appeal consists of documents and facts to which the parties stipulated, this court applies a de novo standard of review. See *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009).

*Statutory Argument*

The statute at issue, K.S.A. 2008 Supp. 8-1020(d), states:

"Upon receipt of a timely request for a hearing, *the division shall forthwith set the matter for hearing before a representative of the director* and provide notice of the extension of temporary driving privileges. The hearing shall be held by telephone conference call unless the hearing request includes a request that the hearing be held in person before a representative of the director. The officer's certification and notice of suspension shall inform the licensee of the availability of a hearing before a representative of the director. Except for a hearing conducted by telephone conference call, the hearing shall be conducted in the county where the arrest occurred or a county adjacent thereto." (Emphasis added.)

In *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374-80, 130 P.3d 560 (2006), our Supreme Court held that in order to set aside a license suspension based upon the KDR's failure to "forthwith set" an administrative hearing pursuant to K.S.A. 8-1020(d), a petitioner must show there was unnecessary delay in scheduling the hearing and that the petitioner was prejudiced by the delay. If the delay in scheduling the administrative hearing was necessary and did not result from a lack of due diligence or reasonable exertion on the part of the KDR, "then the setting is forthwith and complies with the statute." 281 Kan. at 376-77.

Here, Crawford requested an "in person" administrative hearing on April 6, 2009. The KDR notified Crawford by a letter dated April 28, 2009, that it had received her request for a hearing and that she would be notified in the future of when her hearing was scheduled. In September, the KDR set Crawford's in-person administrative hearing for November 12, 2009. Crawford stipulated to the fact that the delay in scheduling her administrative hearing was caused by KDR budget constraints, which forced the agency to temporarily delay all in-person administrative hearings between April and July 2009 for geographic areas outside the 100-mile radius of Topeka. Notwithstanding these stipulated facts, Crawford argues the 7-month delay between her April 2009 request for an in-person hearing and the actual hearing date in November 2009 violates the requirement in K.S.A. 2008 Supp. 8-1020(d) that the KDR set the matter for hearing "forthwith." We disagree.

As a preliminary matter, our Supreme Court has construed the language in K.S.A. 8-1020(d) to require only that the KDR schedule, not conduct, the administrative hearing without unnecessary delay. See *Foster*, 281 Kan. at 374-75. To that end, and based on the undisputed facts set forth above, we find the delay in scheduling Crawford's in-person administrative hearing was necessary and did not result from a lack of due diligence or reasonable exertion on the part of the agency. Thus, Crawford's hearing was set forthwith as required by K.S.A. 2008 Supp. 8-1020(d). As a secondary matter, we note that even if the hearing had not been set forthwith, Crawford failed to present any evidence showing that she was prejudiced by the delay in scheduling her administrative

hearing. Pursuant to *Foster*, a district court cannot vacate a suspension of driving privileges based solely on the KDR's failure to forthwith set an administrative hearing; the petitioner must also show that he or she was prejudiced by the KDR's delay in scheduling the administrative hearing. 281 Kan. at 380.

We find no violation of K.S.A. 2008 Supp. 8-1020(d).

*Constitutional Argument*

Crawford claims that because her case was pending in a county located more than 100 miles from Topeka, the KDR's decision to delay all in-person administrative hearings in that geographic area during the relevant time period violated her constitutional right to equal protection of the laws. To support her claim, Crawford argues she was denied the right to an earlier administrative hearing as compared to persons inside the 100-mile radius, who were not so denied. For the reasons stated below, we find Crawford's argument has no merit.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. " 'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " *In re Tax Appeal of City of Wichita*, 274 Kan. 915, 921, 59 P.3d 336 (2002) (quoting *Sunday Lake Iron Co. v. Wakefield*, 247 U.S. 350, 352, 38 S. Ct. 495, 62 L. Ed. 1154 [1918]). Evidence that similarly situated persons were treated differently is not, in and of itself, sufficient to establish an equal protection violation; an element of intentional or purposeful discrimination must also be present. *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944); *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 387, 673 P.2d 1126 (1983).

The first step of the equal protection analysis is to determine the nature of the challenged classifications and whether the classifications result in arguably indistinguishable classes of individuals

being treated differently. Only if the State treats similarly situated individuals differently is the Equal Protection Clause implicated. Upon a finding of disparate treatment, the court moves on to the second step of the analysis by determining what level of scrutiny should be employed to evaluate the constitutionality of the inconsistent treatment (*i.e.*, classification). *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 315-16, 255 P.3d 1186, 1207 (2011).

In this case, Crawford does not allege that a fundamental right is at stake or that she is a member of a suspect class; thus, the constitutionality of the KDR's actions are evaluated under a rational basis test, which is the most lenient standard of review. *Hodges v. Johnson*, 288 Kan. 56, 72-73, 199 P.3d 1251 (2009). Under that test, similarly situated groups of individuals may be treated differently without violating principles of equal protection as long as the classification used to distinguish between them bears a rational relationship to a legitimate governmental objective.

### The KDR's Decision to Delay In-Person Hearings for Licensees Outside the Topeka Area Did Not Deprive Crawford of the Right to Schedule an Earlier Hearing

With regard to the first step of our analysis, we are not persuaded that the KDR's classification resulted in arguably indistinguishable classes of individuals being treated differently. As a preliminary matter, we find no evidence to support Crawford's assertion that the KDR's actions denied Crawford the right to schedule an earlier administrative hearing. The statutory procedure for scheduling hearings requires the KDR to set the matter for a telephone conference call upon the timely request of a licensee. K.S.A. 2008 Supp. 8-1020(d). Crawford timely requested a hearing. With regard to the manner in which the hearing would be conducted, Crawford asked that it proceed in-person rather than by telephone. Although the KDR ultimately delayed in-person hearings for licensees outside a 100-mile radius of Topeka during the relevant time period, there is no evidence that the KDR delayed scheduling *telephone* hearings for licensees in any geographic area during the relevant time period. Because Crawford could have opted for an

earlier hearing by telephone, there is no merit to her claim that she was unconstitutionally denied the right to an earlier administrative hearing as compared to licensees inside the Topeka area.

As a secondary matter, we find significant the fact that Crawford did not withdraw her request for an in-person hearing after she became aware that there would be a delay in those hearings for geographic areas outside Topeka. Crawford was notified that her driving privileges would be suspended in 30 days unless she requested an administrative hearing to challenge that suspension. Upon such a request, her driving privileges would remain valid until after completion of the hearing.

Crawford submitted a timely request for a hearing and included within it a further request that the hearing be held in-person rather than by telephone. The KDR did not hold any in-person driver's license suspension hearings outside the 100-mile radius of Topeka between April and July 2009, which caused the KDR to delay scheduling Crawford's in-person hearing. Of course, every day the hearing was delayed was another day that Crawford was permitted to keep her driving privileges. Thus, the KDR's classification actually resulted in a more favorable situation for Crawford as compared to the class of licensees located within a 100-mile radius of Topeka. Constitutional principles of equal protection guarantee each person the right to be free from a classification that results in a less favorable situation for one class of individuals as compared to another class of similarly situated individuals. Because there is no evidence that the classification here produced a less favorable situation for Crawford as compared to those within a 100-mile radius of Topeka, Crawford's equal protection claim is without merit.

Thirdly, although we acknowledge that the KDR treated Crawford differently than similarly situated licensees in the Topeka area with regard to the *manner* in which the earlier hearing would be conducted, we are not persuaded that this classification resulted in arguably indistinguishable classes of individuals being treated differently. More specifically, there is a critical distinction between (1) the right to a hearing and (2) the manner in which the hearing will be conducted. The substantive right implicated in Crawford's equal protection claim is the freedom from discriminatory delay by

the KDR for the purposes of scheduling license suspension hearings. The manner (by telephone or in person) in which a license suspension hearing is scheduled to proceed, however, is not a substantive right but instead is merely a procedural method to achieve that end. Because it fails to implicate a substantive right, we find the KDR's decision to temporarily suspend one, but not both, of the procedural methods used to conduct suspension hearings for licensees outside the Topeka area does not rise to the level of an equal protection violation.

### The Rational Basis Test

Even if the KDR's classification had resulted in arguably indistinguishable classes of individuals being treated differently, Crawford's equal protection argument fails under the second part of the test, which requires us to evaluate the constitutionality of the KDR's actions using a rational basis test. Under this test, similarly situated groups of individuals may be treated differently without violating principles of equal protection as long as the classification used to distinguish them bears a rational relationship to a legitimate governmental objective. The party asserting an equal protection violation has the burden to prove the classification lacks a rational basis. The State is not required to provide any facts to support its decision to treat similarly situated groups of individuals differently; the decision to do so may be based on rational speculation unsupported by evidence or empirical data. *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 263, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997). To that end, a classification will survive a challenge based on equal protection "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993). Thus, "[s]imply pointing out that the [classification] might not be rationally related to the state objectives sought under one set of facts is not enough" for the court to deem a classification unconstitutional for equal protection purposes. *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 851, 942 P.2d 591 (1997). Instead, the party challenging the classification bears the onerous burden of negating "every con-

ceivable basis which might support the classification." *Peden*, 261 Kan. at 253.

We begin our analysis by acknowledging that, as an integral part of implied consent legislation in Kansas, the goal and purpose of the administrative license suspension hearing is to promptly remove dangerous drivers from the roadway in order to prevent future injuries to the public. See *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 462, 980 P.2d 1022 (1999); *State v. Mertz*, 258 Kan. 745, 760, 907 P.2d 847 (1995).

In this case, the parties agree that budgetary constraints prevented the KDR from sending hearing officers to geographic locations outside the Topeka area from April to July 2009. As a result, all in-person hearings outside the Topeka area that would have been held during that time period were scheduled or rescheduled for a hearing date after the start of the new fiscal year. For purposes of consistency, the KDR similarly could have postponed all in-person hearings within the Topeka area as well. The KDR also could have chosen not to assign any hearings to those officers who originally were scheduled to hold hearings outside Topeka during that time period. Instead, the KDR chose not to postpone in-person hearings for Topeka and chose to utilize those hearing officers who would have presided over hearings outside Topeka during the relevant time period.

Although KDR's decision to go forward with in-person hearings for licensees in the Topeka area may have caused the agency to treat similarly situated classes of individuals differently, this disparity in treatment does not violate principles of equal protection because it permitted the agency to hold more in-person hearings during that time period, which is rationally related a legitimate governmental objective: to promptly remove as many dangerous drivers from the roadway as possible in order to prevent future injuries to the public. See *Beach Communications, Inc.*, 508 U.S. at 313 (A classification will survive a challenge based on equal protection "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

*Remedy*

On a final note, we find it necessary to briefly discuss Crawford's request that we dismiss the administrative license suspension proceedings against her as a remedy for the alleged equal protection violation. Because we have found there was no equal protection violation, Crawford is not entitled to any relief at all. But even if we had found a constitutional violation, dismissal of these proceedings would not be the proper remedy here. This is because dismissal of these proceedings bears no logical relationship to Crawford's claim that she was denied the right to an earlier in-person hearing as compared to others similarly situated. In this case, the proper vehicle for redress would have been a separate civil proceeding under 42 U.S.C. § 1983 (2006) challenging the KDR's temporary delay of in-person hearings outside Topeka. If the court had found her claim meritorious, Crawford could have obtained initial and permanent injunctive relief requiring the KDR to refrain from conducting any in-person hearings during the 4-month period or requiring the KDR to permit all such hearings, regardless of geographical location.

Affirmed.