NOT DESIGNATED FOR PUBLICATION

No. 124,489

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT LEROY STUART,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Submitted without oral arguments. Opinion filed May 17, 2024. Affirmed in part and dismissed in part.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: A jury convicted Scott Leroy Stuart of two counts of aggravated indecent liberties with a child and one count of sexual exploitation of a child. The jury also acquitted him on two other charges. On appeal, Stuart challenges the sufficiency of the evidence presented by the State in support of one of the aggravated indecent liberties with a child convictions. In addition, he challenges the sufficiency of the evidence presented by the State in support of his sexual exploitation of a child conviction. Stuart also asserts his convictions should be reversed based on prosecutorial error. Finally, he contends for the first time on appeal that the Kansas Offender Registration Act (KORA)

1

is unconstitutional. For the reasons stated in this opinion, we affirm his convictions and dismiss his appeal claiming KORA is unconstitutional.

FACTS

On February 27, 2020, the State charged Stuart with numerous crimes after his minor victim—who was a relative—reported several incidents of sexual abuse that occurred between May and November of 2019. On July 14, 2020, the State amended the charges to include three counts of aggravated indecent liberties with a child, one count of criminal sodomy, and one count of sexual exploitation of a child.

The district court commenced a three-day jury trial on July 7, 2021. At trial, the State presented the testimony of 10 witnesses—including the minor victim—and offered 31 exhibits that were admitted into evidence. Stuart exercised his right not to testify and presented no evidence at trial. Because the parties are well acquainted with the evidence in the record on appeal, we simply provide only a brief summary of the evidence here. To the extent that it is necessary to do so, we will address additional facts in the Analysis section of our opinion.

During the spring of 2019, Stuart moved back to Kansas to help care for a close relative who was ill. Prior to his move, Stuart did not have a significant relationship with his victim other than limited contact on social media. However, shortly after returning to Kansas, Stuart became better acquainted with her. In doing so, he learned about certain mental health or emotional issues with which she had been dealing.

In the early summer of 2019, Stuart took his victim to visit a mutual relative's house—where he was also living—to spend the night. After the relative went to bed, Stuart joined his victim in his bedroom. Stuart gave her some vodka mixed with grape

2

juice. After she drank about half a glass, Stuart removed her shorts and had intercourse with her.

About a week later, the victim and her younger brothers went with Stuart to the relative's house at which he was staying. After the relative had went to bed, Stuart joined his victim and her brothers in his bedroom. As he had done previously, Stuart brought his victim an alcoholic drink. While one of the boys was sitting on the end of the bed playing a video game and the other boy was sleeping, Stuart got under the covers and took off his pants. He then put the blanket over his victim's head and had her perform oral sex on him.

Afterward, Stuart asked his victim to send him nude photographs. Although she did not initially send him the photos, Stuart contacted her later using Facebook Messenger to reiterate his request. This time she responded by sending him several nude photographs from her cellphone.

On September 21, 2019, Stuart went to spend the weekend at his victim's mother's house so that he could work on her mother's roof. After her mother left for work, Stuart was alone in the house with his victim. He came into her bedroom and sat next to her on the bed. While they were talking, Stuart put his hands in her shorts and attempted to have her perform oral sex on him. When the victim told Stuart she wanted to stop, he complied. However, as he left the room, he told her: "'[W]e can finish it later if you want.'"

The next morning, when Stuart was once again alone with his victim in her mother's house, he entered her bedroom. As she laid on her side looking away from the door, Stuart walked over to her and started to rub her back and bottom. According to the victim's digital journal entry that was written within a few days of the incident, Stuart also felt her breasts as she pretended to be asleep. She also reported in a safe talk interview that he put his hands under her shirt and in her panties. Furthermore, she

3

reported that the touching lasted for three or four minutes before Stuart "realized that [she] didn't want to be messed with" and he left her room.

On September 23, 2019, the victim reported Stuart's conduct to a school official. In turn, the official reported the incidents to law enforcement, and an investigation was opened. As part of the investigation, law enforcement officers executed a search warrant. In executing the search warrant, the officers recovered—among other things—a broken computer tablet from Stuart's truck.

Although the tablet was damaged, law enforcement was able to use software to view its contents. In doing so, they found several nude photographs of the victim. Likewise, law enforcement confirmed that the photographs were the same as those depicted in images recovered from the victim's cellphone. Significantly, one photographic image was found on the tablet in three different file locations while another image was found in two different files.

At trial, the State presented evidence that the first photographic image was found in a Facebook messenger folder on Stuart's tablet and that the folder was created on September 6, 2019. Moreover, the State presented evidence that the image was modified and placed in two other folders on Stuart's tablet a week later. Additionally, the second set of images were found both in the cache and in a screenshot folder on Stuart's tablet that were created on August 29, 2019.

A special agent with the Kansas Attorney General's Office also testified at trial that the photographic images would not have been found in different locations on Stuart's tablet if he had immediately deleted them as he claimed to have done. The special agent also testified that it requires an affirmative step to save photographic images to a Facebook Messenger folder.

Ultimately, the jury convicted Stuart of two counts of aggravated indecent liberties with a child and of sexual exploitation of a child. However, it acquitted him of the other count of aggravated indecent liberties with a child and on the count of criminal sodomy. The district court subsequently sentenced Stuart to serve a controlling prison term of 100 months and ordered lifetime postrelease supervision. The district court also provided Stuart with a notice of his duty to register under the Kansas Offender Registration Act upon his release from prison.

Thereafter, Stuart filed a timely notice of appeal.

ANALYSIS

*Sufficiency of the Evidence to Support Lewd Fondling or Touching.*

Stuart first contends the State failed to present sufficient evidence to establish that he "engaged in lewd fondling or touching" of his minor victim when he went into her bedroom and touched her for approximately three to four minutes as she pretended to be asleep in her bed. He also suggests that the State failed to present sufficient evidence to establish that his actions were done with the specific intent to arouse either his sexual desires or those of the victim.

In considering Stuart's challenge to the sufficiency of the evidence, "'we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). However, to the extent that it may be necessary for us to interpret a statute to resolve the issues presented in this appeal, we exercise unlimited review. *State v. Keys*, 315 Kan. 690, 697, 510 P.3d 706 (2022).

5

It is important to recognize that a conviction of even the gravest offense can be based entirely on circumstantial evidence and the reasonable inferences made from that evidence. This is because circumstantial evidence can provide a basis for reasonable inferences made by a jury in determining a question of fact. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021). Here, we find that there is sufficient evidence in the record upon which the jury could conclude that Stuart "engaged in lewd fondling or touching" of a child beyond a reasonable doubt.

Circumstances showing sexual intent may include but are not limited to: (1) a pattern or history of touching over time; (2) the places on the body touched; (3) the nature of the touching; (4) the defendant's consciousness of guilt; (5) a desire for secrecy; and (6) the isolation of the victim. See *State v. Reed*, 300 Kan. 494, 503, 332 P.3d 172 (2014) (evaluating evidence of these factors); *State v. Clark*, 298 Kan. 843, 850, 317 P.3d 776 (2014) (list of nonexclusive factors); *State v. Ketron*, No. 122,026, 2021 WL 1228132, at *3 (Kan. App. 2021) (unpublished opinion) (circumstantial evidence supported the defendant's conviction for indecent liberties with a child even though the touching was limited to the victim sitting on his lap while he rubbed her thighs; lewd touching and specific sexual intent proven by circumstantial evidence).

To meet the elements of K.S.A. 2019 Supp. 21-5506(b)(2)(A), the jury was instructed that it could convict Stuart of aggravated indecent liberties with a child if the State proved:

> "1. The defendant engaged in lewd fondling or touching of [the minor child].
> "2. The defendant intended to arouse or satisfy the sexual desires of [the minor child] and the defendant.
> "3. At the time of the act, [the minor child] was 14 or 15 years old. The State need not prove the defendant knew the child's age.
> "4. [The minor child] did not consent to the fondling or touching.

"5. The act occurred on or about the 22nd day of September, 2019 in Wabaunsee County, Kansas."

The jury was also instructed:

"'Lewd fondling or touching' means fondling or touching in a manner which tends to undermine the morals of a child and is so clearly offensive as to outrage the moral senses of a reasonable person. Lewd fondling or touching does not require contact with the sex organ of one or the other."

In *State v. Ta*, 296 Kan. 230, Syl. ¶ 5, 290 P.3d 652 (2012), the Kansas Supreme Court addressed what type of activity qualifies as a "lewd" under the statutory definition:

"[W]hether a touching or fondling is lewd should be determined by considering the common meaning of the term 'lewd,' that is whether a touching is sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; or indecent, obscene, or salacious. In considering if a touching meets this definition, a factfinder should consider whether the touching tends to undermine the morals of a child and is so clearly offensive as to outrage the moral senses of a reasonable person."

In other words, the question of whether a touching is lewd is a question for the fact-finder—in this case the jury—and depends on the totality of the circumstances. *State v. Rutherford*, 39 Kan. App. 2d 767, 776, 184 P.3d 959 (2008). Here, although Stuart claims his actions did not rise to the level of being lewd, the jury heard the evidence and decided otherwise. Likewise, Stuart's argument ignores the evidence presented by the State that he not only rubbed his victim's back and bottom but that he also touched her breasts and placed his hand in her underwear.

In addition to the victim's testimony, the record also includes details that she gave to a forensic interviewer only two days after the fondling or touching incident occurred. Certainly, a reasonable fact-finder could find that the incident was still fresh in her mind

7

at that point in time. Additionally, the State presented the victim's electronic diary as an exhibit in which she wrote that Stuart had slid "his hand under my blanket and inside my shirt to feel my breasts" while she pretended to sleep.

We also find it significant that the victim described the fondling or touching as "kind of like petting a cat" and similar to "when you're trying to get a baby to fall asleep and you rub their back." She further testified that the incident lasted three to four minutes while she pretended to be asleep in the hope that he would leave her alone. She also testified that Stuart finally left her bedroom when he realized she did not want to be "messed with."

Additionally, we find that it was reasonable for the jury to conclude that the fondling or touching was "lewd" based on this evidence. In particular, the jury could reasonably infer from the evidence that Stuart intended to arouse or satisfy either his own and/or her sexual desires in that this incident occurred just a day after he had unsuccessfully attempted to get her to perform oral sex and told the victim: "'[W]e can finish it later if you want.'"

Stuart suggests that the evidence relating to the two counts on which he was acquitted should not be considered in determining the sufficiency of the evidence. But acquittal of a charge does not mean that the jury needs to disregard all testimony and evidence regarding those charges. Rather, the acquittal simply means the jury failed to find that all elements had been met on that particular charge. In other words, the evidence regarding Stuart's pattern of sexual behavior with his victim could still be considered by the jury as circumstantial evidence regarding his intent in fondling or touching her when she was alone in her bedroom. Regardless, we find that the State presented sufficient evidence to establish "lewd fondling or touching" beyond a reasonable doubt even without consideration of the charges on which Stuart was acquitted.

Considering the evidence and all reasonable inferences therefrom in a light most favorable to the State, we find that there was sufficient evidence presented at trial upon which the jury could determine beyond a reasonable doubt that Stuart engaged in lewd fondling or touching of his victim. Likewise, we conclude that there was sufficient evidence presented at trial upon which the jury could determine beyond a reasonable doubt that Stuart engaged in the lewd fondling or touching of his victim with the intent to arouse his and/or her sexual desires. Consequently, we conclude that the State presented sufficient evidence to support Stuart's conviction for aggravated indecent liberties of a child arising out of the incident on September 22, 2019.

*The State presented sufficient evidence to prove the elements of sexual exploitation of a child.*

Next, Stuart contends that the State failed to present sufficient evidence to prove that he was in possession of the photographic images used to support his conviction for sexual exploitation of a child. Stuart argues that the State failed to prove that he possessed the nude photographic images of his victim found on his tablet because it was broken. Likewise, Stuart claims that if he did receive inappropriate messages from her, he deleted them.

As discussed above, we review the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found Stuart guilty of the crime charged. See *Aguirre*, 313 Kan. at 209. Once again, we consider all the evidence—including circumstantial evidence—to determine whether it is sufficient to support Stuart's conviction. See *Colson*, 312 Kan. at 749-50. In addition, to the extent that we are required to interpret a statute in resolving this issue, our review is unlimited. *Keys*, 315 Kan. at 697.

Here, the State charged Stuart with sexual exploitation of a child under K.S.A. 2019 Supp. 21-5510(a)(2), which required that the State prove that Stuart possessed "any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." The term "possession" is statutorily defined as "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2019 Supp. 21-5111(v). Although the term "control" is not expressly defined in Kansas statutes, Black's Law Dictionary defines it to mean "[t]o exercise power or influence over." Black's Law Dictionary 416 (11th ed. 2019).

Consistent with K.S.A. 2019 Supp. 21-5510(a)(2), the district court appropriately instructed the jury that it could convict Stuart of sexual exploitation of a child if the State proved:

> "1. The defendant possessed a visual depiction in which a person is shown engaging in sexually explicit conduct.
>      "2. The defendant did so with the intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the defendant or another person.
>      "3. The person shown engaging in sexually explicit conduct was less than 18 years old. The State need not prove the defendant knew the child's age.
>      "4. This act occurred between on or about the 1st day of September, 2019 and the 13th day of November, 2019 in Wabaunsee County, Kansas."

Furthermore, the district court appropriately instructed the jury regarding the definition of possession consistent with the provisions of K.S.A. 2019 Supp. 21-5111(v).

In order to convict Stuart of the crime of sexual exploitation of a child, the State had to establish that Stuart had "joint or exclusive control over an item with knowledge of

10

or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2019 Supp. 21-5111(v). The jury did not have to restrict its determination to whether he possessed the photographic images on the date the search warrant was executed and his broken tablet was recovered. Instead, the jury could consider the evidence presented by the State that he was in possession of the images while the tablet was still working.

A review of the record reveals that the State presented evidence that Stuart requested that his victim send him nude photographs. In addition, it presented evidence that she eventually complied with his request by sending him several nude photographs from her cellphone. Further, the State presented evidence that at least two of the nude photographic images were found on Stuart's tablet. In fact, one of the images was found to be stored in three different places on the tablet.

The special agent from the Kansas Bureau of Investigation who examined the tablet testified that one of the images was found in a Facebook Messenger folder and that it would not have been found in that location if someone had deleted the photo as Stuart claimed he had done. Rather, someone would need to download the photo for it to be found in that folder. In addition, the special agent testified that the data taken from the tablet showed that the image in the Facebook Messenger photo was saved or downloaded on September 6, 2019.

Additionally, the special agent testified that one of the photographic images was also found in the screenshot file path and that it appeared to have been enlarged or otherwise manipulated before it was saved to the tablet. According to the agent, the date that the photo was enlarged and/or manipulated appeared to be September 13, 2019. Moreover, the agent testified that a second set of duplicate images was accessed on Stuart's tablet on August 29, 2019.

We find that the State presented evidence that Stuart asked his victim to send nude photos to him and that she complied with his request. Furthermore, the same photographic images that were found on Stuart's tablet were also recovered from her cellphone. Moreover, the tablet was found in Stuart's truck at the time the search warrant was executed, which could be considered by a reasonable fact-finder to be evidence showing joint or exclusive control.

In addition, as discussed above, the special agent that examined Stuart's tablet provided testimony regarding how the images were accessed, saved, and/or manipulated within the timeline alleged by the State. A reasonable fact-finder could find that this evidence supports the State's contention that Stuart knowingly stored the images in a place where he had access and a right of control. Even if the tablet was no longer in working condition at the time it was recovered, the special agent's testimony was sufficient to establish that Stuart accessed at least two of the photographic images in September 2019.

In conclusion, we find that the State presented sufficient evidence—when viewed in the light most favorable to the State—upon which the jury could determine beyond a reasonable doubt that Stuart viewed the photographic images sent by his victim, that he downloaded or saved the images on his tablet, and that he accessed the images on at least two dates in September 2019. We also find that the State presented sufficient evidence at trial upon which the jury could determine beyond a reasonable doubt that he did so with the intent to arouse or satisfy the sexual desires of himself and/or another person. As a result, we also affirm Stuart's conviction for sexual exploitation of a child.

*The State did not commit reversible error by misstating the law at a critical juncture at trial.*

Next, Stuart asserts that the State misrepresented the law to the district court during its arguments regarding Stuart's motion for judgment of acquittal. Specifically, Stuart suggests that in arguing against Stuart's motion for judgment of acquittal, the prosecutor "collapsed the intent element into the lewd touching element." Based on our review of the record on appeal, we do not find this suggestion to be persuasive.

In making his argument for a judgment of acquittal at the close of the evidence, Stuart claimed that his touching of his victim in her bedroom on September 22, 2019, was not sufficient to meet the element of a lewd touching. In response, the prosecutor argued:

> "[The victim] testified, Your Honor, that the day before she'd kind of cut things off and Mr. Stuart left the door open to try and pick up where they had left off. That seems to be clearly what was occurring on Sunday, and there was touching of the butt, which doesn't really serve a purpose in that context, other than to try and arouse."

Stuart claims this argument by the prosecutor somehow merged the element of lewd fondling or touching with the element of the sexual intent.

Here, we do not find the prosecutor's argument made outside the presence of the jury to constitute error. But even if we did assume it to be erroneous, we find the alleged error to be harmless as it is inconsequential to the verdict. In other words, we find the alleged error "did not affect the outcome of the trial in light of the entire record" and that "there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]).

13

In denying Stuart's judgment of acquittal, the district court judge ruled that "whether it was lewd fondling or touching is a question of fact for the jury to determine. It's not something that I can make a ruling on at this point, so that point is denied." As such, it is apparent that the district court focused on the lewd fondling and touching element that Stuart argued had not been met and appropriately allowed this question to go to the jury for resolution based on the evidence presented by the State. In addition, as addressed above, the jury was properly instructed as to the elements of the crime.

Once again, we find that the State presented sufficient evidence upon which the jury could find that both the "lewd fondling and touching" element and the specific intent element had been proven beyond a reasonable doubt. Hence, even if the prosecutor misstated the law in his arguments in response to Stuart's motion for acquittal, we find that the district court applied the correct standard and appropriately denied the motion based on the evidence presented by the State at trial.

*Constitutionality of KORA*

Stuart also contends that the provisions of the Kansas Offender Registration Act—specifically K.S.A. 22-4907—violate the compelled speech doctrine in violation of the First Amendment to the United States Constitution. Nevertheless, Stuart acknowledges that he raises this issue for the first time on appeal. Still, he invites us to address the issue because he alleges it involves purely a question of law on proved or admitted facts and that consideration of the issue is necessary to prevent the denial of fundamental rights. See *State v. Allen*, 314 Kan. 280, 283-84, 497 P.3d 566 (2021).

As this court has found on multiple occasions, it is not prudential for us to address a constitutional challenge to the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., when the issue is not first presented to the district court for consideration. Despite Stuart's assertion to the contrary, we—like the other panels of our court—find that the issue presented involves the presentation of evidence and fact-finding that falls within the realm of our district courts. See, e.g., *State v. Sears*, No. 125,031, 2024 WL 1228869, at *13 (Kan. App. 2024) (unpublished opinion) (declining to address the issue the first time on appeal because it involves fact-finding on the issue of strict scrutiny); *State v. Harpe*, No. 124,732, 2023 WL 5992237, at *8 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. ___ (February 2, 2024); *State v. Pearson*, No. 125,033, 2023 WL 2194306, at *1-2 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. __ (March 21, 2024); *State v. Masterson*, No. 124,257, 2022 WL 3692859, at *2 (Kan. App. 2022) (unpublished opinion) (noting that the compelled speech argument regarding KORA is "legally and fatally flawed").

Here, had Stuart challenged the statute at the district court level under the compelled speech doctrine, the State would have been required to show a compelling governmental interest that justified restricting his First Amendment rights. Because he did not raise the issue, however, we find that the record does not contain any facts regarding either the existence of a compelling governmental interest or the lack of such an interest. As such, we decline the invitation to address the issue for the first time on appeal and dismiss this part of his appeal.

Finally, Stuart contends that the KORA—specifically K.S.A. 22-4908—violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it allows some offenders to petition to remove themselves from the registry while others are unable to do so. Once again, Stuart failed to raise this issue before the district court and invites us to address it anyway because it allegedly involves

15

purely a question of law on proved or admitted facts and consideration of the claim is necessary to prevent the denial of fundamental rights. See *Allen*, 314 Kan. at 283.

This court has also found on previous occasions that the equal protection argument raised by Stuart requires additional fact-finding. As a result, we have declined to address the issue for the first time on appeal. *Sears*, 2024 WL 1228869, at *14; *Harpe*, 2023 WL 5992237, at *9. In *Sears*, this court reasoned:

"Appellate courts apply a rational basis test to equal protection challenges to a criminal statute when there is no suspect class at issue. See *State v. Huerta*, 291 Kan. 831, 834, 247 P.3d 1043 (2011). Statutes 'may treat similarly situated individuals differently, without violating equal protection, if the classifications distinguishing individuals bear a rational relationship to a legitimate government objective.' *Harpe*, 2023 WL 5992237, at *9. The party challenging constitutionality bears the burden of showing more than one set of facts in which the classifications of similarly situated individuals does not advance a government interest. 'Under the rational basis standard, the party asserting that the statute is unconstitutional has the burden to negate "'every conceivable basis which might support'" the classification.' *Alliance Well Service, Inc. v. Pratt County, Kansas*, 61 Kan. App. 2d 454, 476, 505 P.3d 757 (2022).

"Like the defendant in *Harpe*, Sears 'failed to bring this challenge before the district court' thus 'the record is simply not sufficiently developed to allow us to conduct an adequate rational basis analysis.' See *Harpe*, 2023 WL 5992237, at *9." *Sears*, 2024 WL 1228869, at *14.

We agree that additional facts are required for us to consider Stuart's equal protection argument because a rational basis analysis requires consideration of the facts surrounding similarly situated individuals. Likewise, the rational relationship claimed by the State must be found to have a legitimate government objective in order to be upheld. See *Crawford v. Kansas Dept. of Revenue*, 46 Kan. App. 2d 464, 471, 263 P.3d 828 (2011). In addition, the party challenging the constitutionality of the statute under equal protection grounds has the burden to negate "'every conceivable basis which might

16

support'" the classification. *Alliance Well Service, Inc. v. Pratt County, Kansas*, 61 Kan. App. 2d 454, 476, 505 P.3d 757 (2022) (quoting *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 253, 930 P.2d 1 (1996). Accordingly, because Stuart failed to raise the issue before the district court, we decline to consider the issue for the first time on appeal and dismiss this part of the appeal.

Affirmed in part and dismissed in part.